Daniel G. Albert, J.
The question presented by this action for a declaratory judgment and ancillary injunctive relief is whether the defendant village may prohibit plaintiff from using a portion of its property as a helicopter landing area.
The plaintiff corporation owns a 15-acre parcel within an Industrial “ A ” District of the village upon which it operates *626 a plant for the manufacture of various types of bearings. Plaintiff’s building covers approximately two acres. Adjoining it is a blacktopped parking area, also measuring approximately two acres. The balance of the property is as yet unimproved.
Plaintiff also maintains manufacturing facilities at Lancaster, Pennsylvania and has been operating its plant in the defendant village since September, 1963. From October, 1964, until September, 1965, plaintiff utilized a portion of the paved parking area as a site for the landing and take-off of a helicopter which it had previously purchased. During this period, 25 helicopter landings and, one may presume, an equal number of departures, were made at the parking area. The helicopter was stored and serviced at the Westchester 'County Airport and, except for the storage of a limited amount of fuel, no facilities, equipment or material were maintained for it at the site here involved.
The 25 flights to and from plaintiff’s plant were primarily for the transportation of important customers, distributors, licensees or personnel of the plaintiff corporation. The flights were not made on a regular schedule and were not available to the public.
On October 21, 1964, pursuant to the regulations of, and on a form provided by the Federal Aviation Agency (hereinafter referred to as the “ FAA ”), plaintiff gave notice to that agency of the establishment of the landing area on its property. The notice stated that one aircraft would be making an estimated 10 landings monthly at the site and that licensing of the facility was not required by State, county or municipal authorities. By letter dated January 19, 1965, a representative of the FAA informed plaintiff that, subject to compliance with certain conditions not relevant to this litigation, the latter’s notification of “ the establishment of'a corporate private use heliport” was acceptable to the FAA ‘ from an airspace standpoint ’ ’.
Plaintiff discontinued helicopter flights to and from its plant in the Fall of 1965, following communications from the defendant village directing it to do so on the ground that such operations were in violation of the village’s building zone ordinance and of section 249 of the General Business Law. Shortly thereafter, plaintiff commenced this action, seeking, according to its amended complaint, a judgment declaring that:
£< A. The operation of plaintiff’s helicopter and the use of a portion of plaintiff’s aforesaid premises for a helicopter landing-site is not prohibited by either Article VIII-A of defendant’s *627 Building Zone Ordinance or Section 249 of the General Business Law;
“ B. The absolute prohibition of the use of plaintiff’s aforesaid premises in an Industrial ‘ A ’ District by a helicopter is unconstitutional, void and ineffective;
“ C. Defendant be restrained and enjoined from bringing any action or proceeding against the plaintiff to prohibit the operation of plaintiff’s helicopter or to prohibit the use of plaintiff’s aforesaid premises as a helicopter landing site.”
Under section 1 of article VIII-A of the defendant village’s Building Zone Ordinance, the construction or alteration of a building, or the use of a building, lot or premises in an Industrial “ A ” District as a “ Heliport ” is proscribed. Plaintiff’s initial contention is that the prohibition of its ordinance does not extend to the occasional operation of a helicopter from its plant for the purposes and in the manner described supra. The ordinance itself does not define the term “heliport”. Upon the trial of this action, plaintiff produced expert testimony and documentary evidence to demonstrate the distinction which, it is claimed, the FAA draws between a “heliport”, a ‘1 helistop ’ ’ and an off-heliport landing site ’ ’ and to demonstrate that the use plaintiff proposes to make of a portion of its property would constitute such area an ‘ off-heliport landing site ” rather than a “ heliport.”
Plaintiff’s primary source for definition of these terms is the “ Heliport Design Guide ” published by the FAA in November, 1964. In that publication, the term heliport is defined as “ an area * * * that is used or intended to be used for the landing and take-off of helicopters and includes some or all of the various facilities useful to helicopter operation such as helicopter parking, waiting room, fueling, and maintenance equipment. ’ ’ The Design Guide defines helistop as “ a heliport * * * without auxiliary facilities ” such as those mentioned above and off-heliport landing site as “ a take-off and landing area intended for temporary or occasional use.”
Plaintiff also introduced upon the trial a copy of a letter addressed to it from the FAA’s District Airport Engineer, dated June 24, 1965, indicating that unless plaintiff increased its helicopter operations 11 beyond the occasional use as shown on # * * [its1] original proposal ” the FAA would consider the landing area on plaintiff’s property as an “ off-heliport landing site ’ ’ rather than a heliport.
At the outset, the court is concerned only with determining the intent of the legislative body which enacted the ordinance *628 in issue. The question is not what meaning the FAA, or this court, gives to the word “heliport”. The question is what meaning the board of trustees of the defendant village gave that word at the time the ordinance became effective.
A thorough reading of the FAA’s “ Heliport Design Guide ” convinces the court that the distinctions made therein between various types of helicopter landing sites, which plaintiff urges the court to read into the ordinance, have little if any bearing upon the question to be resolved herein and, in any event, are not of assistance to plaintiff’s position. The introductory material in the ‘ ‘ Design Guide ’ ’ states that it is issued ‘ ‘ as a guide for the preparation and construction of heliports of various types”-, that it “outlines the basic physical, technical and public interest factors which .should be considered in establishing heliport sites and that “ the heliports considered range from modest exclusive use types (the vast majority in use today) to fully develop facilities suitable for multiple operations ” (emphasis supplied). It seems clear from these introductory comments as well as from the tenor of the entire publication that the FAA itself treats the wTord ‘ ‘ heliport ’ ’ as a generic term embracing various types of facilities and that the classification of such facilities is solely for the purpose of discussing within the ‘ ‘ Design Guide ’ ’ such factors as location, size and support facilities which will vary depending on the purpose of the heliport and the frequency of helicopter operations. Indeed, the “Design Guide ”.itself, in a chapter entitled ‘ ‘ Physical Characteristics of Heliports ’ ’, states (p. 19) that “ A heliport is recognized and defined as an area for the landing and takeoff of helicopters, but not every site used for this purpose need be designated a heliport ” (emphasis supplied).
To uphold plaintiff’s contention that the helicopter operations it envisions are not within the scope of the ordinance, the court would have to attribute to the Board of Trustees of the defendant village the technical expertise possessed by those who drafted the FAA’s “Heliport Design Guide” and conclude that, in proscribing ‘ ‘ heliports ’ ’ within the limits of the defendant village, that body intended to exclude only those installations available to the general public and intended as terminals for frequent passenger and/or cargo service. To do so would amount not to construction but to judicial revision of the ordinance. Whether reference be had to the dictionary (see, e.g., Webster’s Third New International Dictionary, unabridged ed., p. 1051), or to the meaning currently given to the word by the vast majority of people, a place set aside *629 for the landing- and take-off of a helicopter is a heliport. The portion of plaintiff’s property involved in this action is such a place, and therefore the court concludes that it is a heliport within the scope and prohibition of the ordinance.
Plaintiff also contends that the ordinance is unconstitutional because it has no reasonable relationship to the public health, safety or welfare, and because it is in direct conflict with Federal authority.
This latter point can be disposed of quickly. Plaintiff argues that the FAA granted it permission to establish a limited private helicopter landing area and that the defendant village lacks the power to prohibit that which the Federal Government has authorized.
It is true that States and municipalities are not free to legislate on subjects the regulation of which has been totally preempted by the Federal Government. Thus, attempts by local authorities to set minimum altitudes for aircraft approaching nearby airports (Allegheny Airlines v. Village of Cedarhurst, 238 F. 2d 812) or to formulate aircraft noise restriction ordinances (American Airlines, Inc. v. Town of Hempstead, F. Supp. [Dist. Ct., E.D.N.Y., decided June, 1967]) have been held invalid. It does not follow, however, that because the Federal Government has legislated upon a particular subject, such as aviation or communications, that all State and municipal regulation touching, directly or indirectly, upon such subjects is unlawful. A similar argument was advanced and rejected by the Court of Appeals in Matter of Presnell v. Leslie (3 N Y 2d 384, 390-392) which upheld the right of a municipal zoning authority to prohibit construction of a 44-foot steel radio antenna which an amateur radio operator, licensed by the Federal Communications Commission, proposed to erect at his residence. In that case the court was confronted with a regulation of the Federal Communications Commission providing that approval of the commission be obtained “in any case when * * * the antenna structure proposed to be erected [by any amateur radio station or operator] will exceed an overall height of 170 feet above ground level ” (Code of Fed. Reg., tit. 47, § 12.60, subd. [a]). The court held that the local zoning- regulation, which did not permit such structures in the municipality’s residential district, was not in conflict with the purposes of the Federal legislation (p. 391):
“ The Federal Government, in granting amateurs [radio operator] licenses, is concerned primarily with their competency. Limitations with respect to the equipment they may use are uniform and nationwide, and are not attempted to be related *630 to their danger in their particular locale. Thus, if the regular tion referred to above on the subject of antennae were exclusive, every amateur could build a 170-foot tower on his premises, without even consulting the Federal Communications Commission.
“ Particularly in dealing with amateur radio, which is often carried on in the amateur’s home, problems arise that require for their proper solution thorough consideration of the particular area and surroundings. Regulation of these matters may well be left to local regulation without impairment of the national interest in the matter (Parker v. Brown, 317 U. S. 341, 362-363). This conclusion is further borne out by the lack of a clear intent in the statute to remove from local administration matters concerning the public safety.”
In the instant case, the limits of the area of Federal preemption are even clearer. The FAA’s “Helicopter Design Guide ”, relied on so strongly by plaintiff, reminds interested parties (p. 5) that “The FAA does not license heliports”; that the regulations of the FAA ‘ ‘ concern such matters as minimum safe altitudes, weather ceiling and visibility limitations, right of way in the air and related, standards needed for safety of persons and property both in the air and on the ground ’ ’; but that “It is quite common * * * for state and local authorities to have detailed rules governing the establishment and licensing of heliports.”
The same FAA publication (p. 7) advises heliport developers to review local rules and regulations and, if necessary, to apply to State and/or local authorities ‘ for license or approval of heliport including request for local rezoning if needed ’ ’.
An even stronger statement of the FAA’s recognition of local authority in this area is found in the preamble to that agency’s revised regulations: “It is not the purpose of the revision to deprive appropriate political bodies of their prerogatives with respect to approving the physical sites of airports or related matters. The FAA has always encouraged State and local governing bodies to actively develop civil aviation by planning and building an orderly system of airports and has recognized their authority in matters involving land use, zoning, and airport site selection. The FAA does not select airport sites nor does it approve them except in the case of requests for and under the Federal-aid Airport Program.” (Code of Fed. Reg., tit. 14, ch. 1, Part 157.) (Emphasis supplied.)
Moreover, it must be noted that, contrary to plaintiff’s contention, the FA A did not grant it permission to establish a limited private helicopter landing area. As noted,- supra, the *631 FAA merely indicated its approval 1 ‘ from an airspace standpoint ”. Accordingly, on this issue, the court finds that the ordinance in question is not an unlawful attempt to legislate upon a matter pre-empted by the Federal Government. Nor can the court hold on the record before it that the Board of Trustees’ determination to exclude heliports from the industrial district of the defendant village does not promote ‘ ‘ the health, safety, morals or the general welfare of the community” (Village Law, § 175). The defendant village is a comparatively small municipality. The industrial zone, in which plaintiff’s property is located, is an area of approximately 40 acres lying almost in the center of the village. To the south of plaintiff’s property, and within 700 feet of the proposed landing area, there are one- and two-family dwellings. Within 900 feet of the landing -site is a nursery school; within 1,000 feet is the apartment district of the village which presently houses more than 300 families in 39 buildings; also within 1,000 feet of the landing area is a community shopping center with several stores, a bowling alley and a motion picture theatre. To the west of plaintiff’s property are the -single-family dwelling districts of the village which presently contain almost 300 residences. Within 1,100 feet of the proposed landing area is a complex of fuel storage tanks, some of which are between 50 and 55 feet in height.
Plaintiff’s experts testified that operation of a helicopter from the proposed site would be a safe operation. Defendant, on the other hand, introduced statistical reports of rotorcraft accidents compiled by the Civil Aeronautics Board for the years 1960 through 1965 tending to show a higher percentage of accidents involving helicopters than was experienced from the operation of small fixed-Aving aircraft. Of course, the disparity can be attributed, at least in part, to the fact that the number of helicopters in active use during those years Ava-s comparatively small. For example, the statistical review shoAvs 630 rotorcraft active during 1960 as compared to 74,780 small fixedAving craft. The figures for 1963 are, respectively, 1,171 rotor-craft and 82,586 fixed-Aving craft. Nevertheless, it is noteworthy that despite the fact that the number of helicopters in use almost doubled betAveen 1960 and 1963, the ratio of helicopter accidents to helicopters in use remained constant and relatively high: one accident for CA^ery six helicopters in active use.
In any event, considering the size of the defendant village and the uses of the property in close proximity to plaintiff’s plant, it cannot be said that plaintiff’s operation of a helicopter to and from its plant Avould not jeopardize to some degree the safety of the inhabitants of the village or pose a danger to the *632 other properties therein. In addition to the safety factor, the record reveals ample evidence to support the village’s position that a by-product of the use of plaintiff’s property as a helicopter landing site would be the generation of loud and irritating noise.
The defendant yillage may certainly exclude from its industrial district any uses which constitute a danger or nuisance to other properties within the district or within the village (Arverne Bay Constr. Co. v. Thatcher, 278 N. Y. 222).
It has not been shown that prohibiting plaintiff’s operation of a helicopter to and from its plant site will deprive plaintiff of a substantial part of the value of its property. No doubt it is an inconvenience; however, the degree of inconvenience seems relatively small since there is, less than a mile from plaintiff’s plant and readily accessible to it over well constructed and well maintained roads, a seaplane base suitable for helicopter landings and take-offs.
The court concludes that section 1 of article VIII-A of the defendant village’s Building Zone Ordinance does prohibit the proposed use of plaintiff’s property as a helicopter landing site and that such prohibition is valid and not unconstitutional. Accordingly, a declaratory judgment to that effect will be granted defendant. In view of the conclusion reached herein, it is unnecessary to determine what effect, if any, section 249 of the General Business Law would have upon plaintiff’s proposed helicopter operations and, therefore, insofar as it seeks a declaration on that question, plaintiff’s complaint will be dismissed.