77 N.J. 439 (1978)
390 A.2d 1177
GARDEN STATE FARMS, INC., PLAINTIFF-RESPONDENT, AND STATE OF NEW JERSEY, DEPARTMENT OF TRANSPORTATION, DIVISION OF AERONAUTICS, PLAINTIFF-RESPONDENT,
v.
MAYOR LOUIS BAY, II, COMMISSIONER FLOYD AND COMMISSIONER ARTHUR A. BROKAW, OF THE BOROUGH OF HAWTHORNE, JULES BOUBLIS, JOSEPH ROONEY, JOHN SOTNECK, PAUL ELWOOD, JOSEPH PSOTA AND THE BOROUGH OF HAWTHORNE, A MUNICIPALITY OF THE STATE OF NEW JERSEY, DEFENDANTS-APPELLANTS.
The Supreme Court of New Jersey.
Argued March 8, 1978.
Decided August 9, 1978.
*442 Mr. Robert J. Passero argued the cause for appellants Jules Boublis, Joseph Rooney, John Sotneck, Paul Elwood and Joseph Psota (Messrs. Raaff and Passero, attorneys).
Mr. Douglas C. Borchard, Jr., argued the cause for appellants Mayor Louis Bay, II, Commissioner Harold Floyd, Commissioner Arthur A. Brokaw and the Borough of Hawthorne (Messrs. Evans, Hand, Allabough and Amoresano, attorneys).
Mr. Herman M. Jeffer argued the cause for respondent Garden State Farms, Inc. (Messrs. Jeffer, Walter, Tierney, DeKorte, Hopkinson and Vogel, attorneys).
Mr. Jeffrey M. Hall, Deputy Attorney General, argued the cause for respondent Department of Transportation (Mr. John J. Degnan, Attorney General of New Jersey, attorney; Mrs. Erminie L. Conley, Deputy Attorney General, of counsel).
The opinion of the court was delivered by HANDLER, J.
The question for decision is whether a local zoning ordinance which prohibits the use of land within a municipality as a helistop is invalid because the federal or *443 state governments have preempted the power of local governments to regulate the establishment and location of helistops.

I
Plaintiff Garden State Farms (Garden State) operates over eighty-five retail stores selling milk and related food products throughout the area. Some of these outlets are supplied by the company's main production facility in Wyckoff, New Jersey which is contiguous to another parcel of land it owns in the Borough of Hawthorne. This parcel is a vacant lot situated on what is "generally conceded" to be a heavily traveled thoroughfare, opposite a residential neighborhood.
In order to facilitate fast and efficient transportation between its other production facilities and its Wyckoff plant, Garden State sought to construct a helicopter landing pad on its Hawthorne property. A statement of such intention was submitted to the Board of Commissioners of the Borough which, on October 6, 1971, adopted a resolution granting the company permission to construct the helistop. On October 29, 1971, following several hearings, the Director of the Division of Aeronautics of the New Jersey Department of Transportation granted Garden State the required state license to operate a helistop. On December 6, 1973, however, this license was suspended due to irregularities in the administrative proceedings surrounding the grant of the license. At present the license remains suspended, with further action apparently dependent in part upon the outcome of this litigation.
Opposition to the proposed helistop from neighborhood residents resulted in the institution of suit in the Superior Court, seeking a restraining order enjoining Garden State from constructing the facility on the grounds that the proposed land use violated the Borough zoning ordinance and thus required a variance from the ordinance. The Law Division, however, denied the requested relief, holding that a variance was not required because the intended use of the *444 helistop was an accessory use of Garden State's land which was permitted by the Borough's local statute. Boublis v. Garden State Farms, Inc., 122 N.J. Super. 208, 215 (Law Div. 1972).[1]
Following this decision, the Board of Commissioners adopted Ordinance 1123, which amended the existing zoning ordinance to prohibit the principal or accessory use of any land, buildings or rooftops for the purpose of accommodating the taking off or landing of airplanes or helicopters. Thereafter Garden State instituted this action in lieu of prerogative writ to have Ordinance 1123 declared invalid. Various municipal officials and the Borough are defendants as well as five local residents. Also joined in the action was the Division of Aeronautics as a nominal party plaintiff.
At trial city officials testified that in deciding to enact the Ordinance, they were concerned that the landing and taking off of helicopters would have an adverse impact upon the "serenity" of the community; that the general quality of life would be adversely affected by low-level air traffic with its concomitant increased noise, air pollution and automobile traffic and its anticipated distraction and anxiety to residents. In turn Garden State attacked the Ordinance contending that local governments were without power to regulate aviation by virtue of federal and state preemption of aviation matters and that the ordinance violated N.J.S.A. 40:55-32 (since repealed and superseded by N.J.S.A. 40:55D-62), in that it was not reasonably related to the preservation of the public health, safety and welfare of the Borough and its inhabitants and was not enacted pursuant to a "comprehensive plan".
*445 The trial court ruled that Ordinance 1123 was a valid amendment to the Borough's zoning ordinance and dismissed Garden State's complaint. Garden State Farms, Inc. v. Bay, 136 N.J. Super. 1 (Law Div. 1975). With respect to Garden State's federal preemption claim, the trial court decided that while the Federal Aviation Act of 1958, 49 U.S.C.A. § 1301 et seq., preempted state and local authority in the area of the operation and avigation of aircraft, 136 N.J. Super. at 13, that Act required cooperation by the federal regulatory authorities with state and local aeronautical agencies, 49 U.S.C.A. §§ 1324(b), 1343(i), and thus contemplated the retention by state and local governments of the power to regulate ground activities not directly involving aircraft operation. 136 N.J. Super. at 13-14. With respect to the state preemption arguments, the trial court ruled that although the Aviation Act of 1938, N.J.S.A. 6:1-20 et seq., embraced a comprehensive state regulation to promote safety and aeronautical progress, it did not necessarily preclude municipalities from determining whether or not aeronautical facilities should be constructed within their boundaries, 136 N.J. Super. at 17-18; the trial court noted that in other provisions the Legislature expressly granted authority to municipal and county governments to acquire and use land for airports which implied a legislative grant of some regulatory responsibility. Id. at 18. The court also determined that the justification of the zoning ordinance upon grounds of public health, safety and welfare was supported by the record. Id. at 22-23. Finally, the trial court found that the existing zoning ordinance itself satisfied the "comprehensive plan" requirement of the enabling statute, id., and that the broad zoning scheme continued to be a "comprehensive plan" after it was amended by Ordinance 1123. 136 N.J. Super. at 24.
Garden State filed a notice of appeal to the Appellate Division, which reversed the trial court. 146 N.J. Super. 438 (App. Div. 1977). The appellate panel found no substance to the plaintiff's federal preemption argument. Id. *446 at 442. With respect to the state preemption claim, the court ruled that the Aviation Act of 1938 does not preclude municipal zoning power to limit or prohibit the use of land for aeronautical facilities, but that such an exercise of local zoning authority would be ineffective if it conflicted with the powers granted by other legislation to the State or one of its agencies. Id. at 442-443. The court held that the State Aviation Act gave to the Commissioner of Transportation the power to supervise the location and regulation of helistops and heliports, and that a municipal zoning ordinance could not operate as a bar to the Commissioner's grant of a license for that use. Id. at 443-444. As a result, the Appellate Division did not reach Garden State's "comprehensive plan" attack. Thereafter a petition for certification was filed and granted by this Court. 74 N.J. 280 (1977).

II
We agree with the courts below that state and local governmental efforts to regulate the location of helistops are not preempted by the federal government. See 136 N.J. Super. at 11-14; 146 N.J. Super. at 442. Federal preemption will be found where the subject activity intrinsically requires uniformity of regulation, Cooley v. Bd. of Wardens of the Port of Phila., 53 U.S. (12 How.) 299, 319, 13 L.Ed. 996, 1005 (1851), or where Congress has either expressly or impliedly assumed regulatory control of the entire field of activity. Rice v. Santa Fe Elevator Corp., 331 U.S. 218, 230, 67 S.Ct. 1146, 1152, 91 L.Ed. 1447, 1459 (1947).
The case at hand does not present a situation where preemption may be predicated upon a felt need for a monolithic system of regulation. While in some important aspects uniform regulation may be required, such as in the control and supervision of air space, cf. Burbank v. Lockheed Air Terminal, Inc., 411 U.S. 624, 626-628, 93 S.Ct. 1854, *447 1856-1857, 36 L.Ed.2d 547, 550 (1973), that obvious need does not reach down to the level of the location of small, relatively isolated, privately owned helistops or heliports. Cf. Cooley v. Bd. of Wardens of the Port of Phila., supra, 53 U.S. (12 How.) at 320, 13 L.Ed. at 1005.
Moreover, we have not been directed to express statements of congressional intent or other explicit indications by Congress to preempt local regulation of the placement of helistops or heliports. Similarly, we discern no federal constitutional or statutory sources for implying a congressional intention to preempt this field.
The federal commerce clause grants Congress extensive power to regulate air traffic. U.S. Const., Art. I, § 8, cl. 3; Burbank v. Lockheed Air Terminal, Inc., supra. Pursuant to that power our national legislature has enacted the Federal Aviation Act of 1958, 49 U.S.C.A. § 1301 et seq., a comprehensive federal scheme under which the Secretary of Transportation has the authority to "regulate[] * * * air commerce", id. at § 1303(a), defined as "* * * any operation or navigation of aircraft within the limits of any Federal airway or any operation or navigation of aircraft which directly affects * * * interstate, overseas, or foreign air commerce." Id. at § 1301 (4). While it is clear that state and local authority over the "operation and navigation of aircraft" is supplanted by this federal regulation, see, e.g., Burbank v. Lockheed Air Terminal, Inc., supra, (aircraft noise); Allegheny Airlines, Inc. v. Village of Cedarhurst, 238 F.2d 812, 815 (2 Cir.1956) (flight altitudes); County of Cook v. Priester, 22 Ill. App.3d 964, 318 N.E.2d 327, 331-332 (App. Ct. 1974), aff'd 62 Ill.2d 357, 342 N.E.2d 41 (Sup. Ct. 1976) (aircraft flight weight), significant local power over ground operations of aircraft remains viable. Aircraft Owners & Pilots Assoc. v. Port Auth. of New York, 305 F. Supp. 93, 104-105 (E.D.N.Y. 1969) (federal regulation not so extensive as to prevent airport proprietor from imposing landing fees to regulate traffic utilizing airport); Port of New York Auth. v. Eastern *448 Airlines, Inc., 259 F. Supp. 745, 752 (E.D.N.Y. 1966) (F.A.A. regulations setting preferential runway procedures did not preempt power of Port Authority to prohibit the use of certain runways until certain other runways had been extended); LaSalle Nat'l Bank v. County of Cook, 34 Ill. App.3d 264, 340 N.E. 2d 79, 87-88 (App. Ct. 1975) (F.A.A. regulations establishing height restrictions do not preempt power of local governments to enact height restrictions on property surrounding airports); City of Winner v. Lineback, 86 S.D. 165, 192 N.W.2d 705 (Sup. Ct. 1971) (power of local zoning board to acquire and regulate a municipal airport not preempted by federal statutes).
Further Congress has expressly acknowledged that state authorities have a governmental role in aeronautic fields. Both the Civil Aeronautics Board and the Federal Aviation Administration are directed to cooperate with state and local aeronautical agencies in connection with matters arising under their jurisdiction. 49 U.S.C.A. §§ 1324(b), 1343(i). Even though states are required by the Airport & Airway Development Act of 1970, 49 U.S.C.A. § 1701 et seq., to secure federal funding of new airports, they nevertheless have the authority to develop, construct and enlarge airports. Town of New Windsor v. Ronan, 329 F. Supp. 1286, 1291 (S.D.N.Y. 1971), aff'd 481 F. 2d 450 (2 Cir.1973). In addition, this related Act bars submission of project applications from municipalities if such submission is prohibited by state law (49 U.S.C.A. § 1716(b)), evincing congressional recognition of the strong local interest in the placement of aviation facilities.[2]Thomson Indus., Inc. v. Village of *449 Port Washington North, 55 Misc.2d 625, 286 N.Y.S.2d 187 (Sup. Ct. 1967), aff'd and modified 32 A.D.2d 1072, 304 N.Y.S.2d 83 (App. Div. 1969), aff'd 27 N.Y.2d 537, 313 N.Y.S.2d 117, 261 N.E.2d 260 (Ct. App. 1970) (a local ordinance outlawing heliports could withstand a federal preemption attack by a plaintiff seeking to establish a private landing pad to be used in the plaintiff's business); see People v. Altman, 61 Misc.2d 4, 304 N.Y.S.2d 534 (Distr. Ct. 1969).
Aside from the significant weight that should be afforded to a federal regulatory agency in its conclusion that state and local governments are empowered to regulate matters touching aviation, Thomson Indus., Inc. v. Village of Port Washington North, supra; see British Airways Bd. v. Port Auth. of New York, 558 F.2d 75 (2 Cir.1977), as a policy matter, if federal preemption were found in the present case, state and local governments, which are the only bodies that currently license privately operated helistops and heliports, would be shorn of this regulatory responsibility. Congress could not have intended to create a governmental vacuum with respect to privately operated helistops. See Skinner v. Zoning Bd. of Adjustment of Cherry Hill Twp., 80 N.J. Super. 380, 391-392 (App. Div. 1963). Accordingly, we conclude that federal legislation and regulation have not preempted state and local jurisdiction with respect to the placement of private helistops.

*450 III
The approach to the state preemption issue parallels the federal analysis. Again, matters that by nature inherently require uniform and consistent treatment at the state level are not apt subjects for local regulation. Overlook Terrace Manage. Corp. v. Rent Control Bd. of W. New York, 71 N.J. 451, 461 (1976). Also, where a legislative enactment, either expressly or impliedly, is intended to be exclusive in the field, preemption will be found. Id. It is recognized, however, because our State Constitution enjoins a liberal construction of legislation in favor of local authority, Art. IV, § 7, ¶ 11, legislative intent to supersede local powers must clearly be present. Kennedy v. City of Newark, 29 N.J. 178, 187 (1959); see also Summer v. Teaneck, 53 N.J. 548, 554-555 (1969). A legislative intent to preempt a field will be found either where the state scheme is so pervasive or comprehensive that it effectively precludes the coexistence of municipal regulation or where the local regulation conflicts with the state statutes or stands as an obstacle to a state policy expressed in enactments of the Legislature. Overlook Terrace Manage. Corp. v. Rent Control Bd. of W. New York, supra, 71 N.J. at 461-462. See also Township of Chester v. Panicucci, 62 N.J. 94, 99 (1973).
The Appellate Division held that there was no state preemption of a municipality's power to adopt zoning ordinances limiting or prohibiting the use of property as an aeronautical facility. 146 N.J. Super. at 442. It also ruled, however, that while the municipalities have that power, the Legislature by promulgating the State Aviation Act of 1938, N.J.S.A. 6:1-20 et seq., gave to the Commissioner of Transportation, acting through the Division of Aeronautics, "* * * the ultimate power and responsibility of determining where aeronautical facilities may be located * * *", and that, once an "* * * appropriate showing had been made to warrant the grant of a license * * *" to operate the facilities, a local zoning *451 ordinance could not "* * * operate as a bar to the grant of a license or to that use." Id. at 442-443.
The real issue is the extent to which a local zoning ordinance is a relevant factor which must be considered by the Commissioner in the exercise of his paramount authority under the Aviation Act. Although it is accepted here that the Aviation Act of 1938 is preemptive, we do not share completely the Appellate Division's conception of the Commissioner's statutory discretion, which suggests that in its exercise the Commissioner is free to disregard a conflicting local zoning ordinance.
The Aviation Act is a comprehensive scheme pursuant to which the Commissioner of Transportation is empowered to license all types of aeronautical facilities and their operators, N.J.S.A. 6:1-29; 6:1-44; 27:1A-5.
Except as otherwise specifically provided by law, the Commissioner * * * shall promote progress and education in and shall have supervision over aeronautics within this State, including, but not by way of limitation, the avigation, flight and operation of aircraft, the establishment, location, maintenance, operation, size, design, repair, management and use of airports, landing fields, landing strips, heliports and helistops, sport parachuting centers, air markings and other avigational facilities, and the establishment, operation, management and equipment of fixed base operators. The Commissioner may adopt and promulgate reasonable rules, regulations and orders regulating air traffic and establishing minimum standards for aircraft, pilots, fixed base operators, airports, landing fields, landing strips, heliports and helistops, sport parachuting centers, air markings and all avigational facilities within the State and establishing minimum altitudes of flight commensurate with the needs of public safety, the safety of persons operating or using aircraft and the safety of persons and property on the ground, and to develop and promote aeronautics within this State.
[N.J.S.A. 6:1-29 (emphasis added).]
The express statutory purpose of the Act is to provide for the regulation of aeronautics "* * * in the interest of public safety and the development of aeronautics in this State." Id.; see also N.J.S.A. 6:1-20.
*452 While the statutory scheme is comprehensive, we recognize, as did the Appellate Division to some extent, that the Legislature desired to leave to the municipalities certain responsibilities over the area of land use, development and location of aeronautical facilities. The statutory language is not couched in absolutist phraseology. It refers to "supervision over aeronautics" including the "location * * * of * * * heliports and helistops", reasonably connoting activity and conduct of others relating to aeronautics. It would thus seem that there were contemplated the participation and contribution of other entities in locating heliports and helistops subject to state supervision or superintendence, a notion reinforced by reference to the qualifying statutory phrase, "[unless] otherwise specifically provided by law * * *" which prefaces the grant of the Commissioner's statutory powers. N.J.S.A. 6:1-29.
Moreover, prior to the enactment of the Aviation Act of 1938 the Legislature empowered local planning boards to plan for aviation fields. N.J.S.A. 40:55-5, L. 1930, c. 235, § 5; see N.J.S.A. 40:55-1.11(c), currently N.J.S.A. 40:55D-28(b)(4). In 1953 the Legislature continued intact the power granted the municipalities in 1930 providing, in N.J.S.A. 40:55-1.11(c), that municipalities have the responsibility to zone concerning "transportation", including "airports, and other like matters." The Legislature again acted in 1975, carrying forward these municipal powers. See N.J.S.A. 40:55D-28(b)(4) (Supp. 1977) (municipalities to zone with regard to a "circulation plan element showing the location and types of facilities for all modes of transportation * * *") (emphasis added). See also N.J.S.A. 40:55D-3 (Supp. 1977) ("Circulation" defined as "* * * systems, structures and physical improvements for the movement of people * * * by such means as * * * airways * * *"). Thus, the consistent legislative concern for the infusion of local thinking into the decision as to where to locate aeronautical facilities, not only predated the Aviation Act of 1938, *453 but has been a continuing theme throughout its statutory tenure.
Although not crucial to our decision, we find indeterminate the Appellate Division's reference to an aborted attempt in 1972 to amend the Aviation Act, which it considered as forceful evidence of state preemption. 146 N.J. Super. at 445-446. Both the Assembly and the Senate in that year enacted Assembly Bill 456 which mandated that an "* * * applicant for any license * * * submit a certificate from the appropriate municipal or county authority that the proposed facility is not contrary to provisions of existing zoning ordinances or other local laws." However, the bill was vetoed by Governor Cahill. Veto Messages of Governor Cahill, 1972-1973 at 133. We believe that "* * * caution must be exercised in using the action of the legislature on proposed amendments as an interpretive aid" in discerning legislative intent. 2A Sutherland, Statutory Construction, § 48.18 at 225 (Sands ed. 1973). Indeed in this instance, Assembly Bill 456 could just as well have been a legislative attempt to clarify, and not alter or add to, the powers of the municipalities in this area and its failure of adoption should not be given great weight. See Schmoll v. Creecy, 54 N.J. 194, 203 (1969); Edwards v. Borough of Moonachie, 3 N.J. 17, 24 (1969).
This ambiguous legislative event does not lead to the conclusion that the original Act sought to dislodge completely local influence with respect to aeronautical facilities. Our courts, which had hitherto considered the matter, have also found that the Act did not displace local power over the use of land for aeronautical purposes. In Yoemans v. Hillsborough Twp., 135 N.J.L. 599 (Sup. Ct. 1947) and Ridgewood Air Club v. Bd. of Adjustment, 136 N.J.L. 222 (Sup. Ct. 1947), the courts upheld local zoning ordinances which prohibited aviation fields on grounds that such ordinances were "reasonable", Yoemans v. Hillsborough Twp., supra, 135 N.J.L. at 602 and that they did not contravene the Aviation Act of 1938. Ridgewood Air Club v. Bd. of Adjustment, *454 supra, 136 N.J.L. at 226. Moreover, in differing but analogous contexts, the State has exercised paramount power with respect to a subject matter or activity yet reserved to local government authority to control facets which particularly involve and impact upon local concerns. Southern Ocean Landfill v. Twp. of Ocean, 64 N.J. 190, 194-195 (1974); Summer v. Teaneck, supra, 53 N.J. at 554-557; Belleville Chamber of Commerce v. Town of Belleville, 51 N.J. 153, 157 (1968); Mogolefsky v. Schoem, 50 N.J. 588, 597-598 (1967); Coculo v. City of Trenton, 85 N.J. Super. 523, 526-527 (App. Div. 1964); Chaiet v. East Orange, 136 N.J.L. 375, 377 (Sup. Ct. 1947); Coast Cigarettes Sales, Inc. v. Long Branch, 121 N.J. Super. 439, 445-446 (Law Div. 1972); State v. Stockl, 85 N.J. Super. 591, 594 (Law Div. 1964).
To pull together these diverse interpretive strands, suffice to state that the dominant legislative intent in the Aviation Act is to repose in the Commissioner of Transportation the ultimate authority as to the placement of aeronautical facilities, this predicated upon the mandate that the Commissioner shall "supervise" and "regulate" aeronautics in general and the "establishment, location * * * size [and] design * * * of heliports and helistops" in particular (N.J.S.A. 6:1-29). We can thus agree with the Appellate Division's observation that while municipalities, consistent with the broad statutory purposes of zoning, N.J.S.A. 40:55D-2, may pass ordinances fixing particular land areas for airports or heliports, or even ban them altogether, they must not exercise their zoning authority so as to collide with expressed policy goals of the State legislation, N.J.S.A. 6:1-20, or the final decision of the Commissioner. 146 N.J. Super. at 442-443. See Overlook Terrace Manage. Corp. v. Rent Control Bd. of W. New York, supra, 71 N.J. at 461-462.
It does not follow, as found by the Appellate Division, that the Commissioner, in exercising this authority is "* * * free from municipal control except to the extent that the Commissioner, by regulation, deems it appropriate to give *455 controlling weight to local zoning provisions." 146 N.J. Super. at 444. To the contrary, we perceive that it is entirely appropriate for the Commissioner to pay due attention to the lawful zoning expressions of local governments and not act "* * * in an unreasonable fashion so as to arbitrarily override all important legitimate local interests." Rutgers v. Piluso, 60 N.J. 142, 153 (1972). In a similar context, where the actions of state-level officials were held to be otherwise impervious to local zoning ordinances, we have stated that they "* * * ought to consult with the local authorities and sympathetically listen and give every consideration to local objections, problems and suggestions in order to minimize the conflict as much as possible." Id. at 154.
Especially probative of the vital interests of local government is the municipal zoning ordinance itself. Indeed, the Commissioner by regulation already recognizes the importance of such interests by giving controlling weight to local ordinances in the case of applications for public use airports and private landing strips. N.J.A.C. 16:54-1 et seq.; N.J.A.C. 16:54-2 et seq. See also Aviation Services v. Bd. of Adj. of Hanover Twp., 20 N.J. 275, 285 (1955); Town of Bloomfield v. New Jersey Highway Auth., 18 N.J. 237, 248 (1955). Clearly he should, at the very least, acknowledge the relevance of the local zoning ordinance with respect to applications for private heliports and helistops. To this we would add as a material consideration that the Commissioner ought to take into account whether an applicant for a private heliport has availed itself of any right to a variance under the local zoning law and whether an application for a variance should be pursued as a helpful procedure for fleshing out the impact of the proposed facility upon neighboring land uses.
These observations are not inconsistent with current thinking with respect to locating helistops and heliports. As the Director of the Division testified at trial, normal administrative procedure is to accommodate the needs and desires of localities in establishing aeronautical facilities; so much so that as a matter of policy the initiative would not ordinarily *456 be taken to place a helistop or heliport within a municipality unless the municipality permitted such a use. 136 N.J. Super. at 9. Such deference to municipal zoning ordinances expresses the statutory policy to assimilate local land-use decisions, N.J.S.A. 40:55-1.11(c) (currently N.J.S.A. 40:55D-28(b)(4)), tempered by the supervision of the Commissioner. N.J.S.A. 6:1-29. Thus, a failure on the Commissioner's part to weigh conscientiously local interests, to examine carefully whether the proposed avigation facility is compatible with the surrounding land uses and to consult the local ordinances and authorities in making its licensing decision would constitute an abuse of discretion.
On the instant record the only explicit finding made by the Commissioner was as to whether or not the proposed helistop comports with public safety. 136 N.J. Super. at 9-10. As yet there is no evidence that the Borough's ban on helistops in this instance would constitute a hindrance to aeronautical progress in the area. Moreover, no attention seems to have been directed by the Commissioner to any impact of the proposed facility upon local land use and municipal land use planning. The record discloses that the proposed private helistop was adjacent to a residential area consisting of both one and two-family homes; municipal officials testified at trial as to the disrupting influence a private helicopter landing site would have on the community. These factors must be considered and given substantial weight by the Commissioner in his determination as to whether a license for a helistop should issue upon Garden State's application.
In consequence, the Decision of the Appellate Division that the Hawthorne zoning ordinance is not a bar to the issuance to Garden State of a helistop license is modified in accordance with this opinion. Its judgment that the matter be remanded for an appropriate hearing upon the license application, as modified, is affirmed.
*457 CONFORD, P.J.A.D. (temporarily assigned), concurring and dissenting.
I concur in the Court's determination to the extent that it disapproves the determination of the Appellate Division that the Commissioner of Transportation may disregard local zoning regulations in passing upon an application for a license for a heliport. I dissent to the extent that the Court's determination stops short of holding that a private heliport may not be created at a site prohibited by a valid local zoning ordinance.
I am impressed by the Court's demonstration of the intent of the Legislature, manifested in several statutes, to vest general control over the location of aeronautical facilities in municipalities through the exercise of the zoning power. maj. op. (pp. 452-453). In view thereof, it would require compelling evidence to justify a conclusion that the Legislature intended, by the Aviation Act of 1938, to permit the administrator of the regulatory plan created thereby to impose upon a municipality a heliport prohibited by a valid zoning ordinance. I find no such evidence in that statute. Supervision over "the establishment, location, maintenance, operation * * *" etc. of airports, heliports and helistops, N.J.S.A. 6:1-29; 27:1A-5, imports to me that, in relation to the location of such a facility, the Commissioner has authority to prohibit or regulate a location which is unsafe or otherwise functionally unsuited from an aeronautical or avigational viewpoint. I find in the act no support for the concept that the Commissioner was authorized to direct the creation of a private heliport at any given site, upon an application for a license therefor, notwithstanding a valid local prohibitory zoning ordinance.
The validity of the Hawthorne zoning ordinance (aside from the rejected preemption contention) has not been challenged herein and must therefore be assumed for purposes of this case. Any zoning ordinance of this nature must of course be reasonable, and variances are legally available upon proper showings. But on the record of the *458 present case the Hawthorne ordinance is an absolute bar to plaintiff's proposed use.
For affirmance as modified  Justices SULLIVAN, PASHMAN, CLIFFORD, SCHREIBER and HANDLER  5.
Dissenting in part  Judge CONFORD  1.
NOTES
[1] Hawthorne's zoning ordinance permits a subordinate use or building whose purpose is "* * * incidental to that of the main or principal use or building and located on the same lot." 122 N.J. Super. at 215. We have recently held that a zoning ordinance providing for accessory uses to the principal uses of property would authorize a heliport. PT&L Constr. Co. v. Borough of Paramus, 77 N.J. 20 (1978).
[2] Indeed, the F.A.A. itself has consistently recognized the role of state and local governments in regulating airports in general and heliports in particular. For example, although a variety of federal regulations indirectly affect heliport design and construction and aspects of commercial helicoptor operations, e.g., 14 C.F.R. § 139.101 et seq. (standards for heliports which serve helicopters holding certificates of public convenience); Id. at §§ 121, 133, 135 (standards for commercial helicopter operations), no federal agency licenses privately used heliports. The F.A.A. in its directives concerning safe construction of heliports acknowledges that many state aeronautics commissions license heliports and specifically advises that local zoning ordinances be considered in heliport construction. F.A.A., Heliport Design Guide (8/22/77), Advisory Circular 150/5390-1B, p. 16 ¶ 22. With respect to the construction of heliports, the F.A.A. has also recognized that local bodies have "prerogatives with respect to approving the physical sites of airports or related matters" and "* * * authority in matters involving land use, zoning, and airport site selection." 31 Fed. Reg. 1269 (1966); see also 14 C.F.R. 157 (1977).