NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-2390-13T1

TOWNSHIP OF FAIRFIELD,

    Appellant,

v.

STATE OF NEW JERSEY,
DEPARTMENT OF TRANSPORTATION,

    Respondent.

_____

> **APPROVED FOR PUBLICATION**
>
> **April 10, 2015**
>
> **APPELLATE DIVISION**

Argued November 12, 2014 - Decided April 10, 2015

Before Judges Fisher, Nugent and Manahan.

On appeal from the Department of Transportation.

Dennis M. Galvin argued the cause for appellant (The Galvin Law Firm, attorneys; Mr. Galvin, on the briefs).

Nicole T. Minutoli, Deputy Attorney General, argued the cause for respondent State of New Jersey Department of Transportation (John J. Hoffman, Acting Attorney General, attorney; Lewis A. Scheindlin, Assistant Attorney General, of counsel; Ms. Minutoli, on the brief).

Salvatore Salibello, attorney for respondent Pio Costa Enterprises, joins in the brief of respondent New Jersey Department of Transportation.

The opinion of the court was delivered by

MANAHAN, J.S.C. (temporarily assigned)

Fairfield Township (Fairfield) appeals from the final determination of the Director of the Division of Multimodal Services, Department of Transportation (DOT), granting a Helistop "Special Use" license to Pio Costa Enterprises upon application of one of its principals, Anthony Pio Costa (Pio Costa). After reviewing the record in light of the contentions advanced on appeal and the applicable law, we affirm.

Pio Costa is an owner of property located in an industrial park in Fairfield. Pursuant to Fairfield's zoning ordinance, the use of the property for helistops is prohibited. Nonetheless, commencing in 1994, Pio Costa was granted a temporary helistop license by the DOT. The temporary license was renewed in 1995 and 1996. In 1997 Pio Costa applied for a permanent helistop license which the DOT issued for the time period of January 1, 1998 to January 31, 1999. After expiration of the license, Pio Costa continued to use the property as a helistop.

Fairfield instituted a civil action in the United States District Court naming Pio Costa and various corporate entities as defendants relative to the use of the helistop. In a ruling on March 20, 2006, a district judge denied Pio Costa's motion

for summary judgment noting the validity of the zoning ordinances was not preempted by the Federal Aviation Administration. The district judge remanded the matter to the Superior Court of New Jersey for disposition.

Subsequent to the remand, and upon the filing of an order to show cause by Fairfield, the trial court entered an order temporarily restraining the defendants from "operating or permitting to be operated any and all helicopters upon, on or from the subject property pending further order of the court." A hearing took place on April 18, 2007. After oral argument, the judge continued the restraints. The judge noted in the decision that Pio Costa failed to apply to the DOT for a license.

Thereafter, Pio Costa filed an application with the Division of Aeronautics of the DOT seeking a permanent helistop license. In response, the DOT denied the issuance of the requested license predicated upon the requirement that Pio Costa apply to the appropriate planning authority for permission to maintain the proposed helistop. N.J.A.C. 16:54-2.1(a)(6).

In 2010, Pio Costa applied for a use variance. At the conclusion of three hearing dates, the Board of Adjustment (Board) denied the application in a resolution. Pio Costa then filed a complaint in lieu of prerogative writs.

Pio Costa's attorney informed the DOT by letter about the Board's denial of the application. In a written response, the Deputy Attorney General on behalf of the DOT, advised the attorney that the DOT "will not approve your client's application for a permanent license." The letter further advised a waiver of the application's requirements may be requested but "that it is unlikely" a waiver would be granted "in light of [Fairfield's] denial of [Pio Costa's] application for a variance." Notwithstanding this communication and in clear contravention to its advisement, the DOT did permit the application to proceed which ultimately resulted in the issuance of a license in February 2012.[1] Fairfield was never notified of the application's "revived" status nor was it consulted for its input.

In furtherance of the revived process, Pio Costa was required to publish public notice of the application, which he did. There were no responses filed with the DOT to the publications. During the process, two specialists from the DOT provided Pio Costa with a list of site conditions that were required to be corrected prior to the issuance of a license. In February 2012, Pio Costa corrected the site condition issues and

---

[1] The record includes e-mails between Pio Costa's counsel and an Aeronautical Specialist from the DOT relative to a continuing investigation with the purpose of re-licensing.

provided the required documentation to the DOT. Pio Costa advised the DOT that the helistop was ready for inspection. Two specialists from the DOT completed an evaluation using licensing criteria set forth in N.J.A.C. 16:54-2.5. Pursuant to the evaluation, the specialists found there were no negative impacts on health and safety and defendant was issued a license on February 28, 2012. The license was purportedly served by counsel upon Fairfield on March 6, 2012.[2]

When Fairfield became aware of the use of the property as a helistop, it filed a timely appeal of the DOT decision. Subsequent to a pre-argument conference, the appeal was stayed pending the outcome of the prerogative writ action. After Pio Costa dismissed the action with prejudice, the stay of the appeal was lifted.

During the pendency of the appeal and in accordance with Rule 2:5-1(b), the Director of the Division of Multimodal Services (Director) filed a "Statement of Reasons for Decision." Thereafter, the DOT filed a motion, which we granted, seeking remand for further consideration of issues raised on appeal.

Upon remand, the DOT requested Fairfield and Pio Costa to provide additional arguments. Fairfield argued the helistop was contrary to sound planning and unsafe due to its proximity to an

---

[2] Fairfield denies receiving notification in this manner.

airport, a cellular tower, a car wash, a neighborhood of residential homes and a highway. In response thereto, and after noting the objections of Fairfield, the DOT altered the "Restricted Use" license issued to Pio Costa to a "Special Use" license.

As a result of the DOT's investigation, it was determined the radio cellular tower, as well as the car wash, was located outside the safety area specified in the FAA Advisory Circular for Helistops. It was also noted Pio Costa erected a four-foot fence separating the helistop from the car wash and posted warning signs. In regard to the residential homes, the DOT's investigation determined the nearest residence was not impacted by the approach/departure path. The DOT also made note that it was normal procedure to place the approach/departure path over a highway to have minimal impact on residential areas. In the "Statement of Reasons for Decision", the Director concluded:

> Based upon the review of application, the documents from respective counsels from the Township of Fairfield and Anthony Pio Costa, denial of a variance by the Fairfield Zoning Board of Adjustment and the site inspections, the Division determined that Anthony Pio Costa was entitled to a helistop license for the Bloomfield Avenue location. In this particular instance, there was a history of helicopter use at the location. Prior helicopter use presented no safety or operational issues and there were no complaints about such use from the general public. The added cellular tower did not

6

create an unsafe condition. The location is in an industrial area and is bounded by heavily trafficked roadways. There is no interference with residential use. It was determined that Township concerns could be addressed by issuing a special use license. The special use license restricts users of the helistop to Anthony Pio Costa only, using the helistop only in the daytime visual meteorological conditions in the helicopter listed on the license. The license also requires at least one (1) safety observer in place when the helistop is being used.

After the issuance of the decision, Fairfield filed an appeal.

On appeal, Fairfield raises the following points:

POINT I

THE DEPARTMENT OF TRANSPORATION'S FAILURE TO HOLD A CONTESTED PUBLIC HEARING, PRIOR TO ISSUING A HELISTOP LICENSE TO PIO COSTA, WAS A FATAL PROCEDURAL DEFECT.

POINT II

THE DOT FAILED TO ADEQUATELY CONSIDER THE C-3 ZONE'S PROHIBITION AGAINST HELIPADS AND THE ZONING BOARD'S DENIAL OF PIO COSTA'S USE VARIANCE.

POINT III

THE DOT'S PROCESS FOR CONSIDERING LOCAL LAND USE HAS DEVOLVED INTO APPROVAL, SUBJECT TO A LAND USE BOARD DETERMINATION.

POINT IV

THE DOT'S UNDERSTANDING AND APPLICATION OF GARDEN STATE FARMS, INC. v. BAY II IS MISPLACED, OR IN THE ALTERNATIVE, THAT THE

7                                                        A-2390-13T1

COURT'S RULING OF MORE THAN [35] YEARS AGO REQUIRES RECONSIDERATION, BASED UPON A CHANGE IN LEGISLATIVE INTENT, BECAUSE THE LOCATING OF AERONAUTIC FACILITIES WITHOUT LOCAL ZONING APPROVAL RENDERS THE MUNICIPAL LAND USE LAW NUGATORY.

    A.    AVIATION ACTS

    B.    OTHER VIEWS

    C.    THE AVIATION ACT DOES NOT PREEMPT THE MUNICIPAL LAND USE LAW AS IT CURRENTLY EXISTS.

    D.    THE HYBRID PREEMPTION PROCEDURE OF GARDEN STATE FARMS IS BAD PUBLIC POLICY AND NEEDS TO BE RECONSIDERED, BECAUSE IT RENDERS THE MLUL SUPERFLUOUS.

### POINT V

THE DOT'S PHOTOS ARE MISLEADING.

In Fairfield's supplemental brief, it raises the following points:

### POINT I

THE DOT HAS FAILED TO TURN SQUARE CORNERS.

### POINT II

THE DOT LACKS AUTHORITY TO ORDER THE ISSUANCE OF ZONING OR BUILDING PERMIT.

### POINT III

THE PROPOSED HELISPOT IS UNSAFE.

Our scope of review of a final decision of an administrative agency is strictly limited. In re Taylor, 158

A-2390-13T1

N.J. 644, 656 (1999). We must sustain the agency's action in the absence of a "'clear showing' that it is arbitrary, capricious, or unreasonable, or that it lacks fair support in the record[.]" Circus Liquors, Inc. v. Governing Body of Middletown Twp., 199 N.J. 1, 9 (2009).

When reviewing a final decision of an administrative agency, we consider whether there is sufficient credible evidence to support the agency's factual findings. Clowes v. Terminix Int'l, Inc., 109 N.J. 575, 587 (1988). We must affirm the agency's factual findings if we are satisfied "that the evidence and the inferences to be drawn therefrom support" the agency's decision. Id. at 588. Applying this standard of review to the issues presented by Fairfield, we discern no basis to disturb the Director's decision to grant a Helistop-Use Restricted license.

Fairfield argues its zoning ordinance barring helistops and the Board's resolution denying the application should have effectively precluded the Director from issuing the license. We conclude the adopted regulatory scheme and relevant case law do not comport with Fairfield's argument.

Pursuant to the Aviation Act, the DOT is charged with the

> supervision over aeronautics within this State, including, but not by way of limitation . . . heliports and helistops . . . . [It] may adopt and promulgate

> reasonable rules, regulations and orders . . . commensurate with the needs of public safety . . . and to develop and promote aeronautics within this State.
>
> [N.J.S.A. 6:1-29.]

Therefore, the DOT is tasked with "the ultimate authority as to the placement of aeronautical facilities." Garden State Farms, Inc. v. Bay, 77 N.J. 439, 454 (1978). Thus, while municipalities may pass ordinances restricting heliports under N.J.S.A. 40:55D-2, "they must not exercise their zoning authority so as to collide with expressed policy goals of the State legislation, N.J.S.A. 6:1-20[.]" Ibid.; see also Overlook Terrace Mgmt. Corp. v. Rent Control Bd. of W. N.Y., 71 N.J. 451, 461-62 (1976).

Although the DOT need not "give controlling weight to local zoning provisions," Garden State Farms, supra, 77 N.J. at 454-55, neither should it "arbitrarily [override] all important legitimate local interests[,]" the DOT "ought to consult with the local authorities and sympathetically listen and give every consideration to local objections, problems and suggestions in order to minimize the conflict as much as possible." Id. at 455 (quoting Rutgers, State Univ. v. Piluso, 60 N.J. 142, 153-54 (1972)). The DOT's failure "to weigh conscientiously local interests, to examine carefully whether the proposed navigation

facility is compatible with the surrounding land uses and to consult the local ordinances and authorities in making its licensing decision would constitute an abuse of discretion." Id. at 456.

In Garden State Farms, the municipality adopted a zoning ordinance that prohibited the principal or accessory use of land for the purpose of accommodating helicopter take-offs and landings. Garden State Farms, supra, 77 N.J. at 444. The license applicant brought suit asserting the State's statutory authority over the location of aviation facilities. Ibid.

The Court disagreed with the applicant on the preemption issue, but held the "dominant legislative intent of the Aviation Act is to repose in the Commissioner of Transportation the ultimate authority as to the placement of aeronautical facilities[.]" Id. at 454. The Court determined that, although the State's aeronautical authority did not preempt a municipality's authority to adopt zoning ordinances pertaining to aeronautical facilities, DOT was vested with the final authority to approve and license such facilities. Ibid. Because of this, the Court held a local zoning ordinance could not operate as a bar to DOT's grant of a license for an aeronautical use. Ibid. Therefore, a municipality cannot

exercise its zoning authority "so as to collide with" the final decisions of the DOT. Ibid.

It is clear that while the DOT must carefully consider the local municipality's zoning concerns, the "ultimate authority over the regulating and licensing of aeronautical activities and facilities" remains with the Commissioner. Tanis v. Twp. of Hampton, 306 N.J. Super. 588, 599 (App. Div. 1997) (quoting N.J.A.C. 16:54-1.1(b)). The Commissioner has sufficient statutory authority "to override local zoning decisions," id. at 600, and retains "supervision over aeronautics within this State, including, but not by way of limitation, the aviation, flight and operation of aircraft, the establishment, location, maintenance, operation, size, design, repair, management and use of airports . . . ." N.J.S.A. 6:1-29.

Here, the Director gave careful consideration to Fairfield's objections to the application and the Board's resolution denying the use variance application. Contrary to Fairfield's contentions, the Director "conscientiously [weighed the] local interests, [examined] carefully whether the proposed aviation facility is compatible with surrounding land uses and [consulted] the local ordinances and authorities in making [his]

licensing decision[.]"  Garden State Farms, supra, 77 N.J. at 456.[3]

Under the terms of the license issued by the Director, the helistop could not be used by anyone other than Pio Costa and only in a specified authorized aircraft.  The helistop could only be used during the day.

By consideration of the safety concerns raised by Fairfield, the investigation of those concerns and imposing restrictions on the license granted, the DOT complied with the requirements of Garden State Farms.

Fairfield also argues the Director should have conducted either a contested case hearing or an informational hearing before determining whether to grant the license application.  We disagree.

In the "Statement of Reasons for Decision," the Director did not specifically reference whether the licensing application presented a "contested case" under the Administrative Procedure Act (APA) and, therefore, whether there was a need to conduct an adversarial hearing.  Nonetheless, we find no error.

---

[3] As an example of the balanced approach, Fairfield disputed some of the specialists' individual scoring decisions on the criteria for licensure set forth in N.J.A.C. 16:54-2.5(a).  For the most part, however, the objections Fairfield raised concern scores which were weighted by the DOT specialists in Fairfield's favor.

The APA defines a "contested case" as:

> a proceeding, including any licensing proceeding, in which the legal rights, duties, obligation, privileges, benefits or other legal relations of specific parties are required by constitutional right or by decisions, determinations, or orders, addressed to them or disposing of their interests, after opportunity for an agency hearing[.]
>
> [N.J.S.A. 52:14B-2(b).]

Fairfield accurately states it has been granted the statutory authority to enact zoning ordinances and make decisions concerning them. N.J.S.A. 40:55D-62. However, Fairfield has not cited to any statute or controlling decisions that require a contested case hearing as a predicate when considering an application for a helistop license.

Fairfield's right to enact zoning ordinances flows from a State constitutional provision, N.J. Const. art. IV, § 6, ¶ 2, but that provision does not grant a constitutional right to a hearing under the circumstances of this case. It is well established that "[t]he requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property." Bd. of Regents v. Roth, 408 U.S. 564, 569, 92 S. Ct. 2701, 2705, 33 L. Ed. 2d 548, 556 (1972).

Fairfield does not have a "liberty interest" that has been implicated by the helistop application. Likewise, Fairfield has no protected property interest. A person or entity that is merely interested in, or potentially affected by, the outcome of an administrative decision does not have a constitutional right to a contested case-type hearing concerning an application. Elizabeth Fed. Sav. & Loan Ass'n v. Howell, 24 N.J. 488, 505-06 (1957).

Further, the Director did not abuse his discretion by deciding not to conduct a public informational hearing as permitted by N.J.A.C. 16:54-2.4(a). This regulation provides "[t]he Commissioner [DOT] may require . . . public hearings and/or informational meetings to be held regarding an application for license." N.J.A.C. 16:54-2.4(a). Therefore, a hearing is neither automatic nor mandatory in all cases.

Here, the Director explained in the decision that a hearing was not required because there were no material facts in dispute and the issues were clearly framed by the submissions of Pio Costa's and the Board's attorneys and the Board's resolution denying the variance.

Additionally, as noted, Fairfield and Pio Costa were given the opportunity to provide further arguments regarding the license. Fairfield has provided no support for the argument it

was denied the opportunity to present any relevant facts or argument in furtherance of its opposition to the application or that an informational hearing was requisite for that purpose. The record substantiates that no informational hearing was required.

In sum, consistent with our standard of review, we conclude there was sufficient credible evidence in the record to support the Director's decision to grant the application for a Helistop "Special Use" license. The decision was neither arbitrary, capricious, nor unreasonable.

The remaining arguments raised are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2390-13T1

**FISHER, P.J.A.D., concurring.**

I concur in today's judgment, which I agree is compelled by Garden State Farms, Inc. v. Bay, 77 N.J. 439 (1978), even though — were the slate blank — I would follow the approach cogently described by Judge Conford in his separate opinion in that case, id. at 457-58. In examining the Aviation Act, N.J.S.A. 6:1-20 to -44, Judge Conford found no evidence the Commissioner was given the authority to permit a helistop in a place lawfully rejected by a municipality. Garden State, supra, 77 N.J. at 457. The majority, however, determined the Act provides the Commissioner with superseding authority over the municipality, although the Commissioner may not completely disregard local concerns, 77 N.J. at 451, and must "pay due attention," id. at 455, to the lawful zoning expressions of local governments. See also Rutgers, State Univ. v. Piluso, 60 N.J. 142, 154 (1972) (holding the Commissioner must "sympathetically listen" to local concerns).

Here, the Commissioner asserts the municipality's concerns were considered, and the record does not demonstrate otherwise. Notwithstanding, I would question whether — when such a conflict arises — greater weight should be given to the extent, if any, the public welfare will be served by a helistop's location. For example, a decision to permit a helistop in a location found

unsuitable by local authorities, in my view, should be entitled to less deference when, as here, the helistop will be used only for the convenience of a single individual with no concomitant public benefit. Overriding the expressed local concerns in that instance seems inconsistent with the Act's purpose, which is to develop aeronautics in this State "in the interest of public safety," N.J.S.A. 6:1-20, and not for the pleasure of a single individual. I think, in the circumstances presented, the Commissioner should have assigned much greater weight to the municipality's opposition and, for that reason, we should give less deference to the Commissioner's determination.

Garden State, however, concludes it is enough that the Commissioner listen to the municipality's opposition. Because the record does not suggest the municipality was completely disregarded, and because we are bound by Garden State to defer in that instance, I am obligated to concur in today's judgment.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2390-13T1