Thomas G. Bradley and Mary L. Bradley, Appellants *v.* Township of South Londonderry, County of Lebanon, Pa., Appellee.

396

Submitted on briefs, September 17, 1981, to Judges MENCER, WILLIAMS, JR. and PALLADINO, sitting as a panel of three.

*Thomas G. Bradley,* with him *Robert C. Rowe,* for appellants.

*Thomas S. Long,* for appellee.

OPINION BY JUDGE MENCER, February 3, 1982:

On June 8, 1978, the Township of South Londonderry (appellee), a second class township in Lebanon County, instituted an equity action in the Court of Common Pleas of Lebanon County to enforce provisions of its junkyard ordinance[1] and zoning ordinance,[2]

---

[1] On August 4, 1971, the Township approved the "South Londonderry Township Junkyard Ordinance." In pertinent part, it provides:

202. DEFINITIONS

. . . .

B. Junkyard: Shall include any place where junk as herein defined is stored or accumulated. Any premises as herein defined having two or more unlicensed and discarded motor vehicles stored thereon, shall, in any event, be deemed a junkyard.

C. Junk: Shall include but not be limited to scrap, metal, scrapped, abandoned or junked motor vehicles, machinery, equipment, paper, glass, industrial wastes, and all other salvageable material collected as salvage.

. . . .

203. LICENSE. No person shall engage in a business as a junk dealer, or maintain a junkyard without first having obtained a license from the Board of Supervisors of the Township of South Londonderry. . . .

. . . .

212. ABATEMENT OF NUISANCES. In addition to or in lieu of the remedies provided in Section 211 above, any continued violations of this ordinance, which shall constitute a nuisance in fact or which shall, in the opinion of the Board constitute a nuisance, may be abated by proceeding against the violator in a court of equity for injunctive relief.

It is undisputed that the appellants never obtained the license required to maintain a junkyard as defined by the ordinance.

[2] On December 27, 1973, the Township approved a zoning ordinance. Section 1508 of the ordinance provides:

1508. PARKING AND STORAGE OF CERTAIN VEHICLES. Automotive vehicles of any kind without current license plates and/or state inspection shall not be parked or stored on any residentially zoned property for a period of time to exceed 90 days, other than in a completely enclosed building.

to compel Thomas G. Bradley and his mother, Mary L. Bradley (appellants) to remove several unlicensed and allegedly discarded automobiles from her property,[3] and to enjoin both from parking or storing "junk" vehicles thereon.[4]

After a hearing on December 6, 1979, a chancellor sitting in equity entered an adjudication and decree nisi on March 24, 1980. He found that the Bradley

---

[3] In January 1962, the appellant, Mary L. Bradley, acquired the property in question consisting of two lots separated by a 10-foot wide alley located in the Village of Lawn. Lawn is located in South Londonderry Township in Lebanon County. The larger of the two lots contains a garage and a house in which Mrs. Bradley and her son reside. The smaller lot is vacant. The property is located in a district zoned as low density residential.

[4] The record discloses that from January 1969 through the winter of 1976-77 the appellants have placed nine automobiles on the property and have maintained them outside thereon in excess of 90 days. The vehicles are listed below:

A. A 1957 Ford Fairlane Skyliner registered as an antique to Thomas G. Bradley (antique registration No. X-934). The vehicle's last inspection sticker expired on January 31, 1969. It has been kept outside on the property all but 1 or 2 years since 1969. The vehicle was last started and driven in 1976.

B. A 1957 Ford Fairlane Skyliner registered as an antique to Thomas G. Bradley (antique registration No. X-933). The vehicle's last inspection sticker expired on July 31, 1970. It was last driven in late 1976 or 1977 and kept outside on the property since then.

C. A 1958 Chrysler New Yorker. The vehicle is unregistered. Its last inspection sticker expired on April 30, 1970. The automobile has been kept outside on the property since approximately early or mid-1970. It was last started in 1976.

D. A 1958 Pontiac formerly registered to Mary L. Bradley (former registration No. 706-788). The vehicle is currently unregistered and has remained so since parked on the property in April 1970. Its last inspection sticker expired on April 30, 1970. The automobile was last utilized about that time and kept outside on the property ever since then.

property constituted a nuisance in fact,[5] ordered the appellants to remove the several vehicles therefrom, and enjoined them from parking or storing automobiles without current license plates "and/or" state inspection stickers outside on the property. The decree

E. A 1957 Chrysler Saratoga formerly registered to Mary L. Bradley (apparently former registration No. 706-787). The vehicle is currently unregistered. Its last inspection sticker expired on April 30, 1971. The vehicle has been kept outside on the property since that date.

F. A Ford Fairlane 500 convertible. It has no current registration or inspection sticker. This 'automobile' is a shell with only the dash, frame, and side metal remaining. It is devoid of its wheels, engine, drive train, seats, steering wheel and convertible top. The glass in one side window is apparently broken.

G. A 1963 Oldsmobile Ninety-Eight currently registered to Mary L. Bradley (reg. No. 9G5-132). Its last inspection sticker expired on October 31, 1974. The automobile has been moved several times but kept outside on the property approximately since the expiration of its inspection sticker. It was last driven in early 1977.

H. A 1964 Ford Thunderbird currently registered to Mary L. Bradley (reg. No. 9G9-543). Its last inspection sticker expired on July 31, 1976. The automobile was 'removed from service' and kept outside on the property since July 1976. It was driven, apparently once, within a year of December 6, 1979 and has been started several times since then.

I. A 1963 Oldsmobile Delta Ninety-Eight formerly registered to Mary L. Bradley (former registration No. 120-375). The vehicle is not currently registered. Its last inspection sticker has expired. It has been kept outside on the property approximately since the winter of 1976-77. It was last driven about that time although it has been started since then.

[5] Specifically, the chancellor found, *inter alia*:

10. None of the vehicles have been used for several years and . . . they have been exposed to the elements and are in a deteriorated condition.

.  .  .  .

also enjoined the appellants from maintaining two or more unlicensed and discarded motor vehicles on the property and ordered that a criminal penalty of $500 per day be assessed against them for each day of noncompliance. The appellants took exception to the adjudication and the decree. Arguments were held before the Court of Common Pleas en banc, which filed its opinion, sur exceptions, on August 4, 1980 and ordered that the decree be made absolute. This appeal followed.

The appellants raise a plethora of legal arguments in opposition to the order of August 4, 1980. First, they contend that the lower court lacked jurisdiction to enforce the zoning ordinance because the township Board of Supervisors (Board) did not possess the capacity to bring an equity action to enforce the ordinance and failed to exhaust its statutory remedies provided in the ordinance and the Pennsylvania Municipalities Planning Code (Code).[6] The appellants argue that the Board delegated the sole and exclusive authority to enforce the zoning ordinance to an administra-

12. The deteriorated vehicles have become the home of rats and vermin.

13. The vehicles are in such deteriorated condition that they present a danger to children playing in or about them.

14. The present condition of the defendants' premises having the nine (9) discarded vehicles placed on it, is causing actual harm and damage to the neighborhood and the public in general.

15. The defendants' premises is an aesthetic eyesore.

. . . .

17. The defendants' premises with the deteriorated vehicles and other discarded materials has the appearance of a junkyard.

18. The storage of the nine (9) discarded vehicles on the defendants' premises constitutes a nuisance in fact.

[6] Act of July 31, 1968, P.L. 805, as amended, 53 P.S. §§10101-11202.

tive official and prohibited itself from exercising that authority.

That argument is based upon an incomplete reading of the zoning ordinance. Article 27 of the ordinance specifically states: "Nothing herein contained shall prevent the Township from taking such other lawful action as is necessary to prevent or remedy any violation." The affairs of the township are entrusted to the Board, which, unless otherwise provided, takes action by an affirmative majority vote.[7] An amendment to the township's complaint, dated July 17, 1978, states "that a majority of the Supervisors voted to authorize the Solicitor to take any necessary action to enjoin the defendants from violating the Zoning Ordinance." Clearly, the Board had the statutory capacity to institute an equity action to enforce the township zoning ordinance and properly authorized that action.

The township, moreover, was not required to exhaust its statutory remedies before seeking to enjoin the appellants' alleged violation of its zoning ordinance. The right of a municipality to seek injunctive relief to prevent or remove violations of its zoning ordinances is specifically established in Section 617 of the Code, 53 P.S. §10617. That authority is not circumscribed by the power of the municipality to impose penalties for violations or by the existence of adequate statutory remedies. *See Board of Supervisors of West Brandywine Township v. Matlack*, 38 Pa. Commonwealth Ct. 366, 394 A.2d 639 (1978); *South Fayette Township v. Boy's Home*, 31 Pa. Commonwealth Ct. 254, 376 A.2d 663 (1977); *Bedminster Township v. Brauer*, 19 Bucks 353 (1969), *appeal quashed per curiam*, 436 Pa. 603, 259 A.2d 156 (1969).

Second, the appellants contend that the lower court lacked jurisdiction to enforce Section 212 of the junk-

[7] See Sections 510 and 512 of The Second Class Township Code, Act of May 1, 1933, P.L. 103, *as amended*, 53 P.S. §§65510, 65512.

yard ordinance[8] because the Board never took official affirmative action to seek an injunction thereunder and because the legislative power to enact the junkyard ordinance does not encompass the power to abate nuisances—only the power to license and regulate.

The Board, however, did authorize its solicitor to take any action necessary[9] to enjoin the appellants' alleged violation of the zoning ordinance. The appellants read that mandate too narrowly. They construe it as a restriction, enabling the township to proceed against them only under the zoning ordinance itself. As we interpret the Board's action, it broadly authorized the solicitor to utilize any legal avenue he considered appropriate to enjoin conduct violative of the zoning ordinance. Proceeding under the junkyard ordinance to have the Bradley property adjudicated a nuisance in fact and abated in equity was simply an alternative legal avenue the solicitor was impliedly empowered to pursue to enjoin conduct violative of the zoning ordinance. The Board, moreover, impliedly approved of the proceeding against the appellants under the junkyard ordinance. The township's complaint, which incorporated Section 212 of the junkyard ordinance (providing, *inter alia,* that nuisances in fact may be abated by proceeding against a violator in a court of equity) was verified by the Board chairman who was properly authorized to make the affidavit.

The appellants take no issue with the legislative power granted second class townships to abate nuisances through equitable remedies. They contend, however, that Section 212 of the junkyard ordinance is invalid because that enforcement provision automatically and impermissibly makes any continued violation

---

[8] See note 1 *supra.*

[9] For an excellent discussion of the word "necessary" and its import, see *McCulloch v. Maryland,* 17 U.S. (4 WHEAT.) 1316 (1819).

of the ordinance constitute a nuisance in fact. Unfortunately, the appellants have misread the ordinance. Section 212 does not say that any continued violations of the junkyard ordinance shall constitute a nuisance in fact. It says that the Board may proceed in a court of equity for injunctive relief to remedy continued violations of the ordinance which actually do constitute nuisances in fact.

It is true, as the appellants contend, that, under the authority granted to regulate and license junkyards, townships have no power to define the storage of junked or abandoned automobiles as a nuisance per se. Section 702 of The Second Class Township Code, 53 P.S. §65712,[10] however, authorizes local governing bodies to declare certain activities to be nuisances, including the storage of junked and abandoned automobiles, when, based upon actual conditions in the township, they constitute nuisances in fact. *Commonwealth v. Hanzlik*, 400 Pa. 134, 161 A.2d 340 (1960). Before the chancellor, the township had the burden of proving that the appellants' "storage" of automobiles on Mrs. Bradley's property constituted a nuisance in fact. *Commonwealth v. Keiser*, 88 York 58, 68 Pa. D. & C.2d 418 (1974). It discharged that burden to the chan-

[10] Section 702 states:

To prohibit nuisances, including but not limited to, accumulations of garbage and rubbish, and the storage of abandoned or junked automobiles, on private and public property, and the carrying on of any offensive manufacture or business; and to remove any nuisance or dangerous structure on public or private grounds after notice to the owner to do so, and, in his default, to collect the cost of such removal, together with such penalty as may be prescribed by ordinance from the owner by summary proceedings or in the manner provided for the collection of municipal claims or by an action of assumpsit without the filing of a claim. In the exercise of the powers herein conferred, the township may institute proceedings in courts of equity.

cellor's satisfaction. The lower court had jurisdiction to enforce Section 212 of the junkyard ordinance because the Board properly authorized the township solicitor to proceed in equity to abate a nuisance in fact.

Third, the appellants contend that the definitions of "junkyard" in the junkyard ordinance and the zoning ordinance are irreconcilable.[11] They argue that, because the junkyard ordinance was enacted before the zoning ordinance, the definition of "junkyard" in the former is invalid under the rules of statutory construction[12] and Article 29 of the zoning ordinance. Without the junkyard ordinance, the appellants reason, there can be no equitable remedy. A careful examination of both ordinances discloses that they do not conflict.[13] The definition of "junkyard" in the zoning ordinance

---

[11] In Section 102 (definitions), subsection GG, the zoning ordinance defines "junkyard" as

[a] lot, land, or structure, or part thereof, used primarily for the collecting, storage, and/or sale of waste paper, rags, scrap metal, or discarded material, or for the collecting, dismantling, storage, and salvaging of machinery or vehicles not in running condition, and for the sale of parts thereof.

For the definition of "junkyard" used in the junkyard ordinance, see note 1 *supra.*

[12] Section 1936 of the Statutory Construction Act of 1972, 1 Pa. C. S. §1936, states:

Whenever the provisions of two or more statutes enacted finally by different General Assemblies are irreconcilable, the statute latest in date of final enactment shall prevail.

Although the Statutory Construction Act of 1972 applies specifically to the construction of state statutes, the principles enumerated therein are equally helpful in the interpretation of municipal ordinances. *Francis v. Corleto,* 418 Pa. 417, 211 A.2d 503 (1965).

[13] Even conflicting statutes are to be construed, if possible, to give effect to both. *Duquesne Light Co. v. Monroeville Borough,* 449 Pa. 573, 298 A.2d 252 (1972). A construction which permits both to operate is mandatory in the absence of a manifestly contrary legislative intent. *Appeal of Yerger,* 460 Pa. 537, 333 A.2d 902 (1975).

is substantially similar to that found in the junkyard ordinance, albeit without a reference to quantity. The zoning ordinance governs, *inter alia,* the use of residential land and prohibits the maintenance of a junkyard, as defined therein, on residential property. The junkyard ordinance is directed toward regulating the operation of junkyards as businesses and defines "junkyard" for the purposes of licensing. Section 203 of the junkyard ordinance requires that one who operates or maintains a junkyard, as defined by that ordinance, shall obtain a license. A violation of one ordinance is a separate and distinct offense from a violation of the other. Neither ordinance allows a use prohibited by the other.

Fourth, the appellants argue that the second sentence of Section 202B of the junkyard ordinance[14] should be held unconstitutional because the word "discarded" employed therein is so vague that men of ordinary intelligence must necessarily guess at its meaning. This argument is without merit. In an enactment sought to be interpreted, undefined words and phrases are to be construed according to their common and approved usage. Section 1903(a) of the Statutory Construction Act of 1972, 1 Pa. C. S. §1903(a); *Derry Township v. Swartz,* 21 Pa. Commonwealth Ct. 587, 346 A.2d 853 (1975). "Discard" means to dispose of as no longer useful or valuable (verb); a person or thing cast off (noun). Webster's Third New International Dictionary 644 (1966). There is nothing so vague or ambiguous about the word "discarded" that would cause arbitrary interpretation and discriminatory enforcement. A party who claims that an act is unconstitutional shoulders a heavy burden of proof. *National Wood Preservers, Inc. v. Department of Environmental Resources,* 489 Pa. 221, 414 A.2d 37

---

[14] See note 1 *supra.*

(1980), *appeal dismissed,* 449 U.S. 803, 101 S.Ct. 47, 48 (1981). A legislative enactment enjoys a presumption of constitutionality and will not be declared unconstitutional unless it clearly, palpably and plainly violates the constitution; all doubts are to be resolved in favor of a finding of constitutionality. *Parker v. Children's Hospital of Philadelphia,* 483 Pa. 106, 394 A.2d 932 (1978). The appellants here have neither rebutted that presumption nor otherwise met their burden of showing unconstitutionality.

Fifth, the appellants argue that they are not in violation of the junkyard ordinance because they have not "discarded"[15] any of the automobiles on the property[16] but are, instead, maintaining "the physical integrity" of the vehicles. The record completely belies that argument. Manifestly, automobiles which have been unmoved and continuously exposed to the elements for from 4 years to a decade have been discarded. The record discloses, *inter alia,* that several of the automobiles are in deplorable condition, rusting and otherwise deteriorating. One is nearly overgrown by foliage. A second "automobile," the shell of a Ford Fairlane 500 convertible, has two trees growing between the bumper and the body of the "vehicle" itself.

---

[15] The appellants admit to having several unlicensed automobiles on the property.

[16] The appellants allege that at least six of the nine vehicles are not discarded because they have maintained some forms of insurance on those automobiles. That allegation was contradicted by the testimony of Thomas G. Bradley. He testified that the property has been maintained as a junk place for cars:

> MR. BRADLEY: . . . I would like to testify relative to the vehicles. There are, as stated, ten on the property, two of which are registered as antiques. There are four which are [*sic*] current registration is maintained on and has been maintained on basically throughout as a junk place for cars which we attempted to maintain the registration of in order to be in compliance with the zoning ordinance.

The glass in one of its side windows is broken. Clearly, the appellants have discarded several of the automobiles within the meaning of the junkyard ordinance.

Sixth, the appellants contend that the pleadings did not put them on notice regarding the nuisance question. They maintain that the nuisance-in-fact issue was not properly before the lower court because it is a material allegation upon which the cause of action was based and it was not stated in the complaint or amended complaint as required by Pa. R.C.P. No. 1019 (a).[17] This argument is based upon an incomplete reading of the township's complaint. Paragraph 12 of the complaint specifically cites Section 212 of the junkyard ordinance which authorizes the Board to proceed against a violator in a court of equity for injunctive relief if a nuisance in fact exists. The complaint clearly indicated that the proceeding was being brought under the authority of Section 212. Thus, evidence of a nuisance in fact was part of the burden of proof to be carried by the appellee at the hearing. Because Section 212 of the junkyard ordinance was incorporated in paragraph 12 of the complaint and included as an exhibit thereto, the appellants were given the requisite notice to defend an allegation that their property use constituted a nuisance in fact.

Seventh, the appellants contend that the evidence presented before the chancellor was insufficient, as a matter of law, to sustain the finding that their property use amounted to a nuisance in fact.

Our scope of review in equity matters is limited. The findings of fact of the chancellor will be reversed only where there has been manifest or clear error or a clear abuse of discretion. The

---

[17] Pa. R.C.P. No. 1019(a) states: "The material facts on which a cause of action or defense is based shall be stated in a concise and summary form."

chancellor's decision will stand if there exists sufficient evidence to justify the findings and logically sound, reasonable inferences and conclusions derived therefrom. Even a preponderance of testimony against the findings will be insufficient if there is testimony which, if believed, will warrant them.

*Groff v. Borough of Sellersville,* 12 Pa. Commonwealth Ct. 315, 317, 314 A.2d 328, 330 (1974). Substantial evidence in the record supports the chancellor's finding that the Bradley property constitutes a nuisance in fact. To briefly reiterate: The record reveals that most of the cars have not been started or moved for several years. They are in a rusting and deteriorating condition, which presents a danger to children playing around them. At least two of the vehicles are overgrown by or entangled with weeds or other foliage. On several occasions, the vehicles on the appellant Mary L. Bradley's property have obstructed the free flow of traffic in a public alley between the Bradley lots.[18] More significantly, neighbors of the appellants testified that they believed vehicles on the property have become the home of rats and vermin. It has been held that a haven for rodents is a nuisance in fact. *Commonwealth v. Sadecky,* 41 Pa. Commonwealth Ct. 86, 398 A.2d 1073 (1979). The courts are not required to wait for actual injuries to occur before a condition may be adjudged a nuisance and abated. *Talley v. Borough of Trainer,* 38 Pa. Commonwealth Ct. 441, 394 A.2d 645 (1978). Each of the chancellor's findings is amply supported by evidence.

Finally, the appellants contend that they are in compliance with Section 1508 of the zoning ordinance because several of the vehicles at issue were "stored" on the premises prior to the enactment of the ordi-

---

[18] See note 3 *supra.*

nance, thereby establishing a preexisting nonconforming use under Section 107(13.1) of the Code, 53 P.S. §10107(13.1)[19] and Section 1403 of the South Londonderry Zoning Ordinance. We need not consider the merits of that contention, however.[20] Where a nuisance exists, equity may intervene to abate it, even though there may have been compliance with zoning acts and ordinances. *Mazeika v. American Oil Co.*, 383 Pa. 191, 118 A.2d 142 (1955); *Diehl v. Lockard*, 254 Pa. Superior Ct. 111, 385 A.2d 550 (1978). Even if the appellants had established a valid nonconforming use prior to the enactment of the zoning ordinance, their storage of discarded and deteriorating automobiles was properly prohibited by the lower court.

The appellants' remaining contentions are without merit.

Order affirmed.

## Order

Now, this 3rd day of February, 1982, the order of the Court of Common Pleas of Lebanon County, dated August 4, 1980, dismissing the exceptions of Thomas G. Bradley and Mary L. Bradley to a decree nisi and

---

[19] Section 107(13.1) defines "nonconforming use" as
a use, whether of land or of structure, which does not comply with the applicable use provisions in a zoning ordinance or amendment heretofore or hereafter enacted, where such use was lawfully in existence prior to the enactment of such ordinance or amendment, or prior to the application of such ordinance or amendment to its location by reason of annexation.

[20] Indeed, there is some question whether we may properly consider the appellants' contention. As a general rule, property owners may not raise the defense of a preexisting nonconforming use in an equity proceeding. *See Philadelphia v. Budney*, 396 Pa. 87, 151 A.2d 780 (1959); *Township of Millcreek v. Hurst*, 27 Pa. Commonwealth Ct. 85, 365 A.2d 896 (1976); *Funk v. Township of Bensalem*, 17 Pa. Commonwealth Ct. 205, 342 A.2d 785 (1975).

directing the Prothonotary of Lebanon County to enter a decree absolute, is hereby affirmed.

This decision was reached prior to the expiration of the term of office of Judge PALLADINO.