525 A.2d 478

Gateway Motels, Inc., Appellant *v.* Municipality of Monroeville, Appellee.

Argued March 25, 1987, before President Judge CRUMLISH, JR., and Judges CRAIG, MACPHAIL, DOYLE, BARRY, COLINS and PALLADINO.

*Anthony J. Martin, Martin and Martin, P.C.,* for appellant.

*Thomas W. Corbett, Jr.,* with him, *John M. Silvestri, Lawrence A. Demase,* for appellee.

OPINION BY JUDGE DOYLE, May 8, 1987:

This is an appeal from an order of the Court of Common Pleas of Allegheny County granting a preliminary injunction in favor of the Municipality of Monroeville (Municipality) and ordering Gateway Motels, Inc. (Gateway) to comply with the provisions of certain municipal ordinances and resolutions within sixty days of the date of the court order.

Gateway operates a motel in the Municipality. In 1976 the Municipality, via Resolution 76-2, approved the conditional use application of Al Monzo, Gateway's president, for the location of a helicopter landing site upon the motel property. Gateway subsequently acquired the relevant state and federal approvals to operate the private heliport. The Municipality's resolution, however, contained certain conditional provisions including, *inter alia,* a requirement that the landowner hook up its private fire alarm to the municipal fire system and a requirement that certain fire equipment be placed in close proximity to the heliport. In addition, other applicable local laws require the landowner to design fire lanes that are to be designated by posted signs (Gateway contends it has done this), equip the aircraft hangar with an automatic sprinkler system, and secure a permit for the operation of the heliport.

It appears that Gateway initially refused to comply with the above conditions, some of which became the subject of litigation in 1977 and resulted in a consent decree being issued in April of 1979, which decree directed Gateway to comply with the requirements of Or-

dinance 76-2 as well as other local ordinances. Gateway refused to do so. Eventually the Municipality commenced the instant litigation in equity attempting again to compel compliance with local ordinances.

There is, in addition, a collateral lawsuit that must be briefly described. Duquesne Light Company maintains overhead electrical transmission lines at the situs in question and these lines interfere with the approach of the helicopter. Gateway instituted litigation seeking to have the transmission lines moved. The trial court ruled in Gateway's favor, but the Superior Court of Pennsylvania reversed. Appeal was taken to the Pennsylvania Supreme Court from that decision and, at the time the instant matter was in the trial court, the Supreme Court had not acted upon the petition for appeal.

While there are numerous local regulations that enter into the picture here, it appears that in actuality it is only with respect to two categories that compliance is being sought—the hooking-up of Gateway's alarm system to that of the Municipality and the installation of fire equipment at the heliport landing site and in the hangar. Although there was no testimony taken below, both counsel engaged in legal argument before the trial court, during which time Gateway's counsel admitted non-compliance with these ordinance requirements. Thus, the fact of non-compliance is not in dispute and we need only decide whether the legal defenses asserted below were properly disposed of by the trial court.

We shall consider the heliport landing and hangar safety equipment issue first. Gateway argues that its compliance with the provisions pertaining to the safety equipment was not necessary because in a letter of September 10, 1980, the Municipal Manager stated that the Municipality would postpone the approval date of Gateway's conditional application pending resolution of

the Duquesne lawsuit. Gateway thus contends that because that lawsuit is still not finally resolved, the Municipality is now estopped from requiring compliance with its ordinance. On this point the trial court wrote:

> There is no mention in the letter of the municipality's abandoning past claims with respect to existing structures and/or installations, and we see no reason why municipal ordinances would not remain applicable to them during the pendency of an ancillary matter. We accordingly find the municipal ordinances remain applicable.

We are in complete agreement with this resolution of the issue.

Gateway also argues that the local regulation of heliports has been preempted by federal aviation legislation and, therefore, that the ordinances' attempts to restrict Gateway's operations are invalid. This Court has recently had the opportunity to review the law on federal preemption. In *Carolina Freight Carriers v. Pennsylvania Human Relations Commission,*    Pa. Commonwealth Ct.    ,    , 513 A.2d 579, 582 (1986) we stated:

> 'If Congress evidences an intent to occupy a given field, any state law falling within that field is preempted.' Silkwood v. Kerr-McGee Corp., 646 U.S. 238, 248 (1984). The intent to occupy a field may be 'explicitly stated in the [federal] statute's language or implicitly contained in its structure and purpose.' Jones v. Rath Packing Co., 430 U.S. 519, 525 (1977). When there is no explicit pre-emptive language, an intent to preempt can be inferred where (1) the federal scheme of regulation is so pervasive as to create a reasonable inference that Congress left no room for the states to supplement the law in the area or (2) the federal law pertains to an area in which 'the federal interest is so dominant that

the federal system will be assumed to preclude enforcement of state law on the same subject' or (3) the goal to be obtained by the federal law and 'the character of obligations imposed by it may reveal the same purpose.' Fidelity Federal Savings and Loan Association v. De La Cuesta, 458 U.S. 141, 153 (1982) (citing and quoting from Rice v. Santa Fe Elevator Corp., 331 U.S. 218, 230 (1947). . . . Even in instances where the federal law has not totally displaced state law, state law is nullified if it either conflicts with the federal law, an event which occurs when compliance with both state and federal regulations is impossible, or is an obstacle to accomplishing and executing the goals of federal law.

Gateway, citing *World Airways, Inc. v. International Brotherhood of Teamsters,* 578 F.2d 800 (9th Cir. 1978) and *American Airlines, Inc. v. Town of Hempstead,* 272 F. Supp. 226 (E.D.N.Y. 1967), *aff'd,* 398 F.2d 369 (2nd Cir. 1968), *cert. denied,* 393 U.S. 1017 (1969), maintains that federal law has preempted local legislation in the area of aviation. *World Airways* involved the demotion of a pilot and the substantive question of his competency. *American Airlines* involved a municipal attempt to control noise levels of aircraft by regulating landing and take-off patterns. The case at bar, however, involves neither pilot qualifications nor regulation of *air space,* both of which are the subject of exhaustive federal regulation, but instead focuses upon fire and safety regulations *on the grounds.* It is thus distinguishable from *World Airways* and *American Airlines.*

Although the precise question of whether a local ordinance can ever regulate heliports without violating the doctrine of federal preemption is a question of first impression in Pennsylvania, the matter has been considered in a scholarly opinion authored by Justice

HANDLER of the Supreme Court of New Jersey. In *Garden State Farms, Inc. v. Bay,* 77 N.J. 439, 390 A.2d 1177 (1978), a corporation seeking to maintain a helistop brought an action to have a local ordinance prohibiting such use declared invalid on the basis of, *inter alia,* federal preemption. In considering the federal preemption issue, Justice HANDLER said:

> The case at hand does not present a situation where preemption may be predicated upon a felt need for a monolithic system of regulation. While in some important aspects uniform regulation may be required, such as in the control and supervision of airspace, cf. Burbank v. Lockheed Air Terminal, Inc., 411 U.S. 624, 626-628 . . . (1973), that obvious need does not reach down to the level of the location of small, relatively isolated, privately owned helistops or heliports. Cf. Cooley v. Bd. of Wardens of the Port of Phila. 53 U.S. 299 (1851).
>
> . . .
>
> The federal commerce clause grants Congress extensive power to regulate air traffic. U.S. Const., Art. I, §8, cl. 3; Burbank v. Lockheed Air Terminal, Inc., supra. Pursuant to that power our national legislature has enacted the Federal Aviation Act of 1958, 49 U.S.C.A. §1301 et seq., a comprehensive federal scheme under which the Secretary of Transportation has the authority to '[regulate] . . . air commerce', *id.* at §1303(a), defined as '. . . any operation or navigation of aircraft within the limits of any Federal airway or any operation or navigation of aircraft which directly affects . . . interstate, overseas, or foreign air commerce.' Id. at §1301(4). While it is clear that state and local authority over the 'operation and navigation of aircraft' is supplant-

ed by this federal regulation, see, e.g., Burbank . . . , significant local power over ground operations of aircraft remains viable. Aircraft Owners & Pilots Assoc. v. Port Auth. of New York, 305 F. Supp. 93, 104-105 (E.D.N.Y. 1969) . . . Port of New York Auth. v. Eastern Airlines, Inc., 259 F. Supp. 745, 752 (E.D.N.Y. 1966). . . .

*Id.* at    , 390 A.2d at 1180-81 (citations omitted). The *Garden State Farms* Court also noted:

[I]f federal preemption were found in the present case, state and local governments, which are the only bodies which currently license privately operated helistops and heliports, would be shorn of this regulatory responsibility. Congress could not have intended to create a governmental vacuum with respect to privately operated helistops.

*Id.* at    , 390 A.2d at 1182. We agree with these observations and add that local zoning of airport properties has been specifically provided for in the Airport Zoning Act, 74 Pa. C. S. §§5911-5920.

Gateway has admitted that it has not hooked up its fire alarm system to that of the Municipality. It maintains, however, that the Municipality has not met its burden to justify the granting of the preliminary injunction because it has not demonstrated that Gateway's failure to hook up its system to the Municipality has caused irreparable harm.[1] The Municipality argues that where there is an admitted violation of a local ordinance, there is irreparable harm *per se.*

---

[1] Gateway's asserted reason for failing to hook up its alarm system to that of the Municipality is that false alarms triggered by drunken patrons would result in the arrival of local fire equipment, which would needlessly frighten motel guests. It further asserts that it has its own twenty-four hour surveillance system and a central switchboard through which it can communicate immediately

We begin by examining Section 617 of the Pennsylvania Municipalities Planning Code, Act of July 31, 1968, P.L. 805, *as amended,* 53 P.S. §10617, under which the Municipality has here proceeded. Section 617 states:

> In case any building, structure, or land is, or is proposed to be, erected, constructed, reconstructed, altered, converted, maintained or used in violation of any ordinance enacted under this act or prior enabling laws, the governing body or, with the approval of the governing body, an officer of the municipality, in addition to other remedies, may institute in the name of the municipality any appropriate action or proceeding to prevent, restrain, correct or abate such building, structure or land, or to prevent, in or about such premises, any act, conduct, business or use constituting a violation.

53 P.S. §10617. Because this language specifically allows the issuance of an injunction even where other remedies at law are available, we believe that when proceeding under this Section a municipality need not demonstrate irreparable harm above and beyond the violation of the ordinance itself. Precedent supports this position. In *Board of Supervisors of West Brandywine Township v. Matlack,* 38 Pa. Commonwealth Ct. 366, 394 A.2d 639 (1978), we held that the mere fact that a municipality could impose penalties or violations did not prevent it from seeking injunctive relief. Moreover, there was no independent discussion of irreparable injury in *Matlack* beyond the fact of the ordinance violation. *Accord Township of South Fayette v. The Boys' Home,*

---

with fire companies if need be. Why drunken patrons of Gateway would be more prone to set off false alarms than patrons of other public places of accommodation is not explained.

31 Pa. Commonwealth Ct. 254, 376 A.2d 663 (1977); *Hilltown Township v. Mager*, 6 Pa. Commonwealth Ct. 90, 293 A.2d. 631 (1972), *appeal dismissed*, 411 U.S. 979 (1973). Accordingly, we hold that the requisite showing for the grant of a preliminary injunction pursuant to Section 617 was made here.

Finally, Gateway argues that the ordinance requiring the hook-up of its alarm system to the Municipality's is arbitrary, unduly burdensome and confiscatory. Municipal ordinances, of course, enjoy a presumption of constitutionality. *Simco Sales Service of Pennsylvania, Inc. v. Township of Lower Merion Board of Commissioners*, 38 Pa. Commonwealth Ct. 434, 394 A.2d 642 (1978). Gateway contends, however, that since it has developed its own alarm system, to require it to comply with local ordinances is arbitrary. We cannot agree. The Municipality has a valid interest in protecting the safety of visitors there. We see no reason why it should be forced to rely upon whatever safety system a particular motel business chooses to employ. Indeed, its desire to provide a more uniform control over fire safety is anything but arbitrary.

Further, Gateway maintains that the ordinance is unduly oppressive since false alarms would result in the disruption of Gateway's business. It is well-settled that:

> [A] law which purports to be an exercise of the police power must not be unreasonable, unduly oppressive or patently beyond the necessities of the case, and the means which it employes must have a real and substantial relation to the objects sought to be attained. Under the guise of protecting the public interests the legislature may not arbitrarily interfere with private business or impose unusual and unnecessary restrictions upon lawful operations.

*Gambone v. Commonwealth*, 375 Pa. 547, 551, 101 A.2d 634, 637 (1954). Gateway, to support its argument

that the alarm system requirement is arbitrary, relies upon *Fantastic Plastic, Inc. v. City of Pittsburgh,* 32 Pa. Commonwealth Ct. 41, 377 A.2d 1051 (1977), wherein we affirmed the trial court's determination that a local ordinance prohibiting bottle clubs[2] was unduly oppressive because the local ordinance acted to *destroy* property rights which had heretofore merely been *regulated.* Additionally, there was no evidence that the prohibitive ordinance was related to the public good. In the instant case, we fail to see how a requirement that a motel's fire alarm system be connected with that of the Municipality could be for any reason other than the public good, especially in light of the numerous hotel disasters which all too frequently greet newspaper readers. To the contrary, we believe the requirement bears a real and substantial relationship to protecting the public, *Gambone,* and in so doing does not prohibit, in fact, the running of a motel business.

Gateway also relies upon *Simco Sales Service* wherein we struck down a local ordinance which invoked an outright ban upon street sales of ice cream and related products after finding from the evidence presented that the prohibitive nature of the ordinance was unreasonable. Here, unlike *Simco Sales Service,* the ordinance does not outright ban Gateway's motel business; it merely requires installation of certain fire safety features. Thus, we do not believe *Simco Sales Service* is controlling here.

Finally, Gateway argues that the hook-up requirement is confiscatory. This issue was not raised below

---

[2] Bottle club was defined in the pertinent local regulation as "a place of assembly owned, maintained or leased, for pecuniary gain, in which no intoxicating liquors are sold, but where patrons are permitted to bring intoxicating liquors upon the premises for their own use and consumption." *Fantastic Plastic, Inc. v. City of Pittsburgh,* 32 Pa. Commonwealth Ct. 41, 43-44, 377 A.2d 1051, 1052.

**52**

and hence we refuse to consider it on appeal. *See* Pa.
R. A. P. 302(a).

Based on the foregoing, the order of the trial court is
affirmed.

ORDER

Now, May 8, 1987, the order of the Court of Com-
mon Pleas of Allegheny County, No. GD 85-20262, dat-
ed April 15, 1986, is hereby affirmed.