**PAUPACK TOWNSHIP, WAYNE COUNTY, Pennsylvania, By and Through the BOARD OF SUPERVISORS**

v.

**LAKE MOC–A–TEK, INC., and Moc–A–Tek Stock Car Racing Association, Inc., and Moc–A–Tek Speedway, Inc.**

**Appeal of: Moc–A–Tek Speedway, Inc.**

Commonwealth Court of Pennsylvania.

Submitted Sept. 24, 2004.

Decided Dec. 20, 2004.

Joseph T. Wright, Jr., Scranton, for appellant.

Ronald M. Bugaj, Honesdale, for appellees.

Before: COLINS, President Judge, and COHN JUBELIRER, Judge, and FLAHERTY, Senior Judge.

OPINION BY Senior Judge FLAHERTY.

Moc–A–Tek Speedway, Inc. (Speedway) appeals from an order of the 22nd Judicial District, County of Wayne (trial court) which granted the request for a preliminary injunction filed by Paupack Township, Wayne County, Pennsylvania, (Township) by and through the Board of Supervisors (Supervisors) requiring the cessation of all car racing activities. We affirm.

The Lake Moc–A–Tek Racetrack (Racetrack or track) is a clay surfaced stock car racing track which has been in operation since 1964 in Wayne County. The owner of the property and Racetrack is Lake Moc–A–Tek, Inc. (Owner). Speedway is the current lessee of the Racetrack, parking area and grandstands.

On February 26, 2003, the Supervisors filed a complaint in equity seeking injunctive relief against Owner and Speedway. The complaint alleged a violation of the Township's Storm Water Management Ordinance (Ordinance) and requested that the trial court enjoin racing activities from occurring until the violations were remedied. Speedway and Owner filed answers and new matter.

Thereafter, the parties entered into a stipulation of facts which was accepted by the trial court. The facts reveal that after each event the track is regraded and leveled. The track is oval and slopes inward so that storm water run-off from the track accumulates in the infield of the track.

In 2001, it was determined that storm water from an adjacent parking area was creating softness in part of the track and action was taken to divert the water. A concrete grated drainage structure was created to intercept water from the parking lot and the water was diverted onto swampland owned by an adjacent property owner. An opening was also cut out on a berm adjacent to the track to aid the track in drying out. This action also served to deliver storm water onto the swampland of the adjacent property owner.

The adjacent property owner complained to the Township, whose engineer inspected the premises, which resulted in a

municipal enforcement action arising under the Ordinance. The Owner paid a fine resulting from the enforcement action, without an admission of liability.

Four agencies regulate the manner in which storm water can be discharged into waters of the Commonwealth. Those agencies are the Pennsylvania Department of Environmental Protection (DEP), through its National Pollution Discharge Elimination System (NPDES) permitting process, the Wayne County Soil Conservation District, the Township and the Pennsylvania Department of Natural Resources through its Fish Commission.

To address the water situation, Owner has devised a short and a long term plan. The short term plan involved creating a large detention and desilting pond in the track infield and a discharge system from that pond into an open swale with filtering devices. Although the short term plan eliminated all storm water diversions onto the adjacent property owner's land, track and parking lot, silt still accumulates in amounts which exceed the capability of the filtering devices.

As to the long term plan, DEP has informed Owner that it may not further disturb the property to improve the quality of the short term remediation without an NPDES application and permit and that such cannot be obtained in fewer than 210 days.

Based on the stipulation of facts, the trial court issued an order on May 17, 2004 granting the preliminary injunction and ordered that a storm water management plan be filed within five days.

On appeal, Speedway argues that the trial court erred in granting the portion of the preliminary injunction which requires the cessation of all racing activities. There are certain prerequisites that must be met for the issuance of a preliminary injunction. First, that it is necessary to prevent immediate and irreparable harm which could not be compensated by damages. Second, that greater · injury would result by refusing it than granting it. Third, that it will properly restore the parties to their status as it existed immediately before the alleged wrongful misconduct. Fourth, that the activity it seeks to restrain is actionable, that its right to relief is clear and that the wrong is manifest. Fifth, that it is reasonably suited to abate the offending activity. Sixth, that it will not adversely affect the public interest. *Summit Towne Centre, Inc. v. Shoe Show of Rocky Mount, Inc.*, 573 Pa. 637, 828 A.2d 995 (2003). For a preliminary injunction to issue, all prerequisites must be met and if the petitioner fails to establish any one of them, there is no need to address the others. *County of Allegheny v. Commonwealth*, 518 Pa. 556, 544 A.2d 1305 (1988). In reviewing the grant or denial of a preliminary injunction, we need only examine the record to determine if there are any apparently reasonable grounds for the action of the trial court. *Id.*

Initially, Speedway argues that the record does not demonstrate that the cessation of racing activities until such time as a storm water plan is submitted to' the Township is necessary to prevent irreparable harm. As set forth in the stipulation of facts, the matter was first brought to attention because of a neighbor complaining about stormwater from the Racetrack accumulating on neighbor's property. Owner implemented a short term plan, which was approved by DEP, the Wayne County Conservation District and the Township. Additional plans to the water remediation plan cannot occur without first obtaining a NPDES permit, which cannot be obtained in fewer than 210 days. According to Speedway, Supervisors have not shown that ceasing racing activities under

these circumstances is necessary to prevent irreparable harm inasmuch as no further corrective measurements can be taken until an NPDES permit is secured.

This court has previously held, however, that a municipality need only prove a violation of its ordinance to establish its entitlement to an injunction. Irreparable harm need not be demonstrated. *Gateway Motels, Inc. v. Monroeville,* 106 Pa.Cmwlth. 42, 525 A.2d 478 (1987), *petition for allowance of appeal denied,* 518 Pa. 621, 541 A.2d 748 (1988).

In *Gateway,* the trial court granted a preliminary injunction in favor of the municipality and ordered Gateway, owner of a private heliport, to comply with certain municipal ordinances including the requirement that it hook up its alarm system with the municipality. On appeal, Gateway argued that the municipality did not demonstrate that Gateway's failure to hook up its system to the municipality's would cause irreparable harm. Municipality countered that where there is an admitted violation of a local ordinance, irreparable harm is proven.

This court examined the ordinance under which the municipality proceeded and observed that it provided that the municipality could proceed to abate or prevent the violation. Because the ordinance permitted the issuance of an injunction, this court determined that the municipality need not prove irreparable harm above and beyond the violation of the ordinance itself.

This case involves violations of the Storm Water Management Ordinance. Section 401 provides that before any land disturbance activities involving any regulated activities may be commenced, the property owner or developer must first submit a drainage plan to the Township. Land disturbances include grading, which is performed after each race. Regulated activities include installation of storm water system, such as occurred here. These activities require submittal and approval of a storm water management plan which has not occurred in this case.

Section 804 of the Ordinance provides that with respect to violations, the Township shall have the same remedies available to it as under the Paupack Township Zoning Ordinance. Section 1602 provides that in addition to other remedies "the Township may initiate and maintain appropriate actions by law or in equity to restrain, correct or abate violations...." Thus, as in *Gateway,* inasmuch as the issuance of an injunction is specifically allowed, irreparable harm is demonstrated by violation of the Ordinance itself, which occurred in this case.

Next, Speedway argues that no greater injury will result to the Township by allowing racing activities to continue while the storm water issues are being addressed. Speedway maintains that the Racetrack will still be there and the storm water will still flow after rains whether racing activities are conducted or not.

While it is true that storm water will continue to flow whether or not the track is in use, the racing activities exacerbate the situation. Namely, as provided in the stipulation of facts, maintenance of the track after each race requires the re-grading and re-leveling of the track. The parties further stipulated that this maintenance causes earth disturbance of unprotected areas on a regular basis and although the short term plan is in place, such plan still allows track and parking silt to accumulate in amounts which exceed the capability of the filtering devices.

Finally, Speedway argues that the trial court erred in finding that enjoining car racing from being conducted at the track was reasonably suited to abate Speedway's

violation of the Ordinance. Although Speedway acknowledges that it is proper for Owner to be required to submit a storm water management plan to comply with the Ordinance, Speedway argues that the Township has not demonstrated how preliminarily stopping racing activity will abate the Ordinance violation.

As previously stated, however, the racing activities exacerbate the storm water violations because the required maintenance of the track after the races causes earth disturbances of unprotected areas. Because grading is defined as a land disturbance activity under the Ordinance, each time the track is re-graded, without having an approved storm water management plan on file with the Township, a violation of the Ordinance occurs. Given that Owner is precluded from instituting any other corrective measures until it can secure a permit from the NPDES, the only way to abate any further violations is to prohibit racing activity.

In accordance with the above, the decision of the trial court is affirmed.

## O R D E R

Now, December 20, 2004, the order of the 22nd Judicial District, County of Wayne, in the above-captioned matter, is affirmed.