**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1163-16T3

IN THE MATTER OF THE ISSUANCE OF
FLOOD HAZARD AREA INDIVIDUAL PERMIT
(HARDSHIP EXCEPTION) NO. 1400-12-
0002.7 FHA 16002.

_____

Submitted May 24, 2018 — Decided June 19, 2018

Before Judges Reisner, Mayer, and Mitterhoff.

On appeal from the Division of Land Use Regulation, Department of Environmental Protection, Permit No. 1400-12-0002.7 FHA 16002.

Lowenstein Sandler LLP, attorneys for appellant John J. Sumas (Richard F. Ricci, Reynold Lambert, and Nikki Adame Winningham, on the briefs).

Connell Foley LLP, attorneys for respondent Hanover 3201 Realty, LLC (Kevin J. Coakley, of counsel; Nicole B. Dory and Nicholas W. Urciuoli, on the brief).

Gurbir S. Grewal, Attorney General, attorney for respondent New Jersey Department of Environmental Protection (Jason W. Rockwell, Assistant Attorney General, of counsel; Melissa P. Abatemarco, Deputy Attorney General, on the brief).

PER CURIAM

Appellant John J. Sumas (Sumas), the Chief Operating Officer of Village Supermarkets, Inc. (Village), appeals a Flood Hazard Area (FHA) Individual Permit (Permit) and Hardship Exception issued by respondent New Jersey Department of Environmental Protection (NJDEP) to respondent Hanover 3201 Realty, LLC (Hanover). The Permit allows Hanover to construct a jughandle at the intersection of Route 10 and Ridgedale Avenue in the Township of Hanover. We affirm.

This appeal represents the latest chapter in in a series objections, lawsuits, and appeals filed by Village and its employees in opposition to Hanover's construction of a shopping center (Project) that includes a competitor supermarket. The history of Village's efforts to stop, or at least delay, the Project are recounted in Hanover 3201 Realty, LLC v. Village Supermarkets, Inc., 806 F.3d 162, 167-70 (3d Cir. 2015).

We recite the facts relevant to this appeal. Hanover owns property near Route 10, at the intersection of Sylvan Way and Ridgedale Avenue, in Hanover Township (Property) slated for the development of a shopping center with a Wegmans supermarket. Village owns a ShopRite supermarket located approximately two miles from the Property. The property owner prior to Hanover entered into a developer's agreement with the New Jersey Department of Transportation (NJDOT) to construct roadway and traffic

2                                                                        A-1163-16T3

improvements as part of the development of the Property. The Hanover Township Planning Board (Board) also considered road improvements associated with the development of a shopping center on the Property. In approving Hanover's Project, the Board required Hanover to obtain NJDOT approval for all proposed road improvements.

In 2013, Hanover applied to the NJDOT for permits associated with the Project's planned road improvements. The NJDOT determined that the construction of a jughandle at the intersection, which would provide ingress and egress to the shopping center, would be safer and more efficient than Hanover's proposed left turn lanes. The NJDOT issued a permit for a jughandle to access the Project. The NJDOT had prior plans to construct a jughandle at that intersection, and thus built culverts and retained land adjacent to the intersection specifically for the future construction of a jughandle.

Village's objections and subsequent appeals challenging the Board's approval of Hanover's Project, the NJDOT's issuance of permits for a jughandle, and the NJDEP's issuance of wetlands permits to construct the shopping center were rejected by this court. We found Village's various legal challenges to Hanover's

Project to be uniformly without merit and motivated by a desire to protect its own financial interest.[1]

Having failed to stop the Project by way of its earlier legal actions, Village, through Sumas, objected to the NJDEP's issuance of a FHA Permit for the construction of the jughandle. Paulus, Sokolowski and Sartor, LLC (PS&S), an engineering and environmental consulting firm retained by Hanover, filed an application with the NJDEP for a Permit to construct the jughandle. The Permit application was nearly 800-pages long and contained twenty attachments, including site photographs, maps, development plans, calculations, compliance statements, a Flood Hazard Area engineering report, an environmental report, and a stormwater engineering report.

The NJDEP submitted a review letter indicating Hanover's Permit application was incomplete and/or deficient. The NJDEP requested Hanover supplement the application with additional documentation, as well as amplification and recalculation of specific aspects of the PS&S engineering reports.

---

[1] Based on Village's opposition to nearly every aspect of the Project, and its filing of multiple lawsuits to stop Hanover's development of a shopping center with a competitor supermarket, Hanover filed an antitrust lawsuit against Village in federal court. See Hanover 3201 Realty, LLC v. Vill. Supermarkets, Inc., 806 F.3d 162 (3d Cir. 2015). The Third Circuit allowed Hanover to proceed with its lawsuit based on Village's "policy of filing anticompetitive sham petitions." Id. at 181.

Princeton Hydro, LLC (PH), an ecological and engineering consulting firm hired by Sumas, submitted a letter to the NJDEP challenging various aspects of PS&S's engineering reports and data. PH claimed a water flow study relied upon by PS&S was outdated, rendering its water flow calculations for the Permit flawed. PH believed the flawed calculations were significant given the existing flooding problems at the Property. Rather than submit its own calculations, analysis, or evidence, PH argued water flows would be changed by the proposed road construction and Hanover's plan would not adequately compensate for flood storage displacement.

PS&S responded to the NJDEP's review letter and PH's claims. PS&S explained that the submitted study accounted for the existing water flow and the proposed water flow based on the planned jughandle and roadway improvements. PS&S addressed every issue in the letters from NJDEP and PH.

Over the course of several weeks, the two engineering firms exchanged letters regarding Hanover's Permit application. Rather than continue an endless letter writing campaign in support of the Permit, Hanover withdrew its application. Hanover elected to submit a revised Permit application to NJDEP with a hardship waiver request.

On May 27, 2016, Hanover submitted the revised application for an FHA Permit with a hardship exception. The revised application and hardship request engendered more letter writing among Hanover, Sumas, and the NJDEP. Sumas continued to object to Hanover's revised Permit application. At the NJDEP's request, Hanover's expert responded to all objections raised by Sumas and his expert. PS&S also provided additional engineering studies, plans, and detailed water flow calculations in response to the continued objections raised by Sumas.

On September 23, 2016, the NJDEP issued the Permit and hardship exception to Hanover. In issuing the Permit, the NJDEP prepared a report with detailed findings on the flood impact of the jughandle, as well as Hanover's satisfaction of the regulatory requirements for construction in a floodway. In addition, the NJDEP analyzed Hanover's compliance with the requirements for a hardship exception and set forth its findings in support of the exception.

Sumas appeals from the NJDEP's issuance of the Permit to Hanover. Sumas argues Hanover failed to meet the requirements for a hardship exception. Sumas also contends the NJDEP failed to

make the required fact findings in support of the Permit.[2]

"The scope of appellate review of a final agency decision is limited." In re Carter, 191 N.J. 474, 482 (2007). We do not overturn a final agency decision unless "it was arbitrary, capricious or unreasonable, or . . . it lacked fair support in the evidence," ibid. (quoting Campbell v. Dep't of Civil Serv., 39 N.J. 556, 562 (1963)), or "the agency did not follow the law." In re Virtua-West Jersey Hosp. Voorhees for a Certificate of Need, 194 N.J. 413, 422 (2008). The burden is on the appellant to prove the agency's error by a "clear showing." Twp. of Fairfield v. State, Dep't of Transp., 440 N.J. Super. 310, 318 (App. Div. 2015) (quoting Circus Liquors, Inc. v. Governing Body of Middletown Twp., 199 N.J. 1, 9 (2009)).

"Where an agency's expertise is a factor, a court defers to that expertise, particularly in cases involving technical matters within the agency's special competence." In re Adoption of Amendments to Ne., Upper Rariten, Sussex Cty., 435 N.J. Super. 571, 583 (App. Div. 2014). "This deference is even stronger when the agency, like DEP in regard to [the disputed permit], 'has been

---

[2] We note Hanover's merits brief questioned Sumas' standing to challenge the NJDEP's issuance of the Permit. However, the standing issue was not raised by Hanover as part of the NJDEP's issuance of the Permit. Thus, we decline to address the standing issue. See Nieder v. Royal Indem. Ins. Co., 62 N.J. 229, 234-35 (1973).

delegated discretion to determine the specialized and technical procedures for its tasks.'" In re Freshwater Wetlands Gen. Permits, 372 N.J. Super. 578, 593 (App. Div. 2004) (quoting Newark v. Natural Res. Council, Dep't of Envtl. Prot., 82 N.J. 530, 540 (1980)). "[W]e do not reverse an agency's determination 'because of doubt as to its wisdom or because the record may support more than one result.'" Ibid. (quoting In re N.J. Pinelands Comm'n Resolution, 356 N.J. Super. 363, 372 (App. Div. 2003)). "We give substantial deference to the interpretation of the agency charged with enforcing an act." Merin v. Maglaki, 126 N.J. 430, 436-37 (1992). "The agency's interpretation will prevail provided it is not plainly unreasonable." Id. at 437.

Sumas argues the NJDEP's issuance of the Permit was improper because Hanover failed to meet the regulatory requirements for a hardship exception. Because the NJDEP accepted the calculations and data presented by Hanover's experts, and rejected the arguments of his experts, Sumas argues the NJDEP's conclusions are arbitrary, unreasonable, and unsupported by the record.

We defer to an agency's fact-finding determinations, particularly where there is an extensive record relating to complex technical material within an agency's expertise. See Freshwater Wetlands, 372 N.J. Super. at 593. Hanover submitted almost 1000 pages of studies, analyses, calculations, plans, drawings, photos,

and reports to the NJDEP in support of the Permit application and hardship exception. The NJDEP scrutinized each objection raised by Sumas and required Hanover to submit new or amended reports with specific calculations and analyses. The NJDEP carefully reviewed all of the material, including the material presented by Sumas' experts, prior to issuing the Permit.

Having reviewed the record, we find that the NJDEP's decision to issue the Permit complied with the requirements of the Flood Hazard Area Control Act, N.J.S.A. 58:16A-50 to -66, including the factors for a hardship exception in accordance with N.J.S.A. 58:16A-55(b), as well as the Flood Hazard Area Control Act Rules, N.J.A.C. 7:13-1 to -24. The NJDEP found

> there is no feasible and prudent alternative
> to the proposed project, including not
> pursuing the project, which would avoid or
> substantially reduce the anticipated adverse
> effects of the project, and . . . granting the
> hardship exception would not compromise the
> reasonable requirements of public health,
> safety and welfare, or the environment.

The NJDEP explained that "not constructing the proposed jughandle would unnecessarily endanger the travelling public, while [Hanover] has demonstrated that constructing the jughandle would provide a public benefit to existing traffic and would not exacerbate flooding or adversely impact the environment." The NJDEP noted the NJDOT's previous approval of the jughandle as a

A-1163-16T3

superior alternative to left-turn lanes or leaving the intersection unimproved. The NJDEP considered that the present road configuration causes motorist confusion and increased traffic, and that the jughandle would ease the present traffic conditions, alleviate existing flooding problems, and improve access to area businesses. Thus, we find the NJDEP's decision to issue the Permit was not arbitrary or capricious, has adequate support in the record, and is sufficiently explained.

We next address Sumas' argument that the NJDEP failed to make sufficient findings of fact and therefore the Permit must be invalidated. "Fact-finding is a basic requirement imposed on agencies that act in a quasi-judicial capacity." In re Issuance of Permit by Dep't of Envtl. Prot., 120 N.J. 164, 172 (1990). "An agency must engage in fact-finding to the extent required by statute or regulation . . . ." Id. at 173. "When an agency's decision is not accompanied by the necessary findings of fact, the usual remedy is to remand the matter to the agency to correct the deficiency." Ibid.

The NJDEP issued a ten-page engineering report, dated May 27, 2016, and a hardship exception memorandum stating its factual findings and correlating them to the relevant statutory requirements and governing regulations in support of the Permit. The NJDEP need not address every argument raised during the

10

application process. The agency is required to provide a sufficient record to inform the interested parties of the basis for its decision and "facilitate[] appellate review." Freshwater Wetlands, 372 N.J. Super. at 594.

Having reviewed the record, we find the NJDEP engaged in sufficient fact-finding based upon the entirety of the record, after a lengthy and detailed review process.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION